# EXHIBIT A

ENDORSED
FILED
San Francisco County Superior Court

AUG 3 1 2007

GORDON PARK-LI, Clerk
BY: _____ JUN P. PANELO
Deputy Clerk

FULBRIGHT & JAWORSKI L.L.P.
DOUGLAS W. STERN (BAR NO. 82973)
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

Attorneys for Plaintiff CRUMP INSURANCE
SERVICES, INC. a Texas Corporation

**CASE MANAGEMENT CONFERENCE SET**

FEB 0 1 2008 - 9:00 AM

**DEPARTMENT 212**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CRUMP INSURANCE SERVICES, INC. a Texas Corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>MICHAEL P. MCGRATH, an individual, ALL RISKS, LTD. a corporation, and Does 1 through 50, inclusive,<br><br>            Defendants. | Case No. **CGC-07-466804**<br><br>[Unlimited Civil Complaint]<br><br>Assigned For All Purposes To The Honorable<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>(1) BREACH OF CONTRACT;<br>(2) MISAPPROPRIATION OF TRADE SECRETS;<br>(3) BREACH OF FIDUCIARY DUTY;<br>(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (CLIENTS);<br>(5) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (CLIENT);<br>(6) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE (EMPLOYEES);<br>(7) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (EMPLOYEES) |

Plaintiff Crump Insurance Services, Inc., as successor to Crump E&S of San Francisco Insurance Services, Inc. alleges as follows:

## I.

## THE PARTIES

1.   Plaintiff Crump Insurance Services, Inc. ("Crump") is a corporation organized and existing under the laws of the State of Texas, with its principle place of business located in Dallas, Texas. Crump is the successor in interest to Crump E&S of San Francisco Insurance Services, Inc. Plaintiff is engaged as an intermediary in the business of providing insurance to customers.

2.   At all times material hereto Plaintiff was qualified to do business in the State of California.

3.   Defendant Michael P. McGrath ("McGrath") is an individual residing in the State of California, City of Novato.

4.   Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks, Ltd. ("All Risks") is a corporation believed to exist under the laws of the State of Maryland, with its principal place of business located in Hunt Valley, Maryland. Defendant All Risks is a competitor of Plaintiff in the insurance business.

5.   Plaintiff is ignorant of the true names and capacities of those individuals and entities sued herein as Doe Defendants 1 through 50, inclusive. Plaintiff will amend this Complaint to set forth their true names and capacities at such time as they are ascertained.

6.   Plaintiff is informed and believes, and on that basis alleges that those defendants sued herein as Does 1 through 50, inclusive, participated in the wrongs alleged herein, in various capacities and are liable to Plaintiff for the claims asserted herein.

## II.

## BACKGROUND FACTS

7.   On or about June 7, 1996, Defendant Michael P. McGrath entered into a written contract titled "Memorandum of Agreement" with Crump E&S of San Francisco Insurance Services, Inc. Plaintiff Crump Insurance Services, Inc. is the successor in interest to Crump E&S

1 of San Francisco Insurance Services, Inc. A true and correct copy of the Memorandum of
2 Agreement is attached hereto as Exhibit 1.

3     8.    Since the original Memorandum of Agreement was entered into in 1996, the
4 parties thereto have executed extensions of the Memorandum of Agreement. On or about April
5 30, 2007, Plaintiff and McGrath executed the "Broker Compensation Agreement." The Broker
6 Compensation Agreement, effective January 1, 2007, extended the terms of the Memorandum of
7 Agreement.

8     9.    Pursuant to the June 7, 1996 Memorandum of Agreement, McGrath agreed to a
9 number of terms which he has violated as alleged more particularly below.

10     10.    Pursuant to paragraph 10 of the June 7, 1996 Memorandum of Agreement,
11 McGrath agreed that in the course of his employment, he would obtain confidential information
12 belonging to Crump. This information would relate to the persons, firms, and corporations which
13 were, or would become, customers of Crump. Such confidential information would include, but
14 not be limited to, the names of customers, policy expirations dates, policy terms, conditions and
15 rates, and familiarity with customers' risks. Defendant McGrath agreed that he would not
16 disclose or make use of such confidential information, except as was required in the course of his
17 employment. He further agreed that upon termination of his employment, and for a period of one
18 year thereafter, he would not disclose or make use of such confidential information without the
19 prior written consent of Crump.

20     11.    Pursuant to paragraph 11 the June 7, 1996 of the Memorandum of Agreement,
21 McGrath agreed that all records, files, manuals, lists of customers, blanks, forms, materials,
22 supplies, computer programs and other materials furnished to him by Crump would remain the
23 property of Crump. He further acknowledged that this property was confidential and not readily
24 accessible to Crump's competitors. Upon termination of the employment relationship, McGrath
25 agreed that he would immediately deliver to Crump or its authorized representatives all such
26 property, including copies.

27     12.    Pursuant to paragraph 13 of the Memorandum of Agreement, McGrath agreed that
28 so long as he working for Crump, he would not engage in business activities competitive with the

DOCUMENT PREPARED ON RECYCLED PAPER

1    work he performed for Crump.

2        13.    McGrath further agreed pursuant to paragraph 14 of the Memorandum of
Agreement, that he would not solicit employees of Crump for any other competitive company.

4        14.    McGrath also agreed pursuant to paragraph 16 of the Memorandum of Agreement
that he would provide 15 days prior written notice to Crump should he wish to terminate his
position as an employee of Crump.

7        15.    At some time prior to June 3, 2007, McGrath negotiated with Defendant All Risks
to cease being an employee of Plaintiff Crump and instead to become an employee of All Risks.
At some time prior to June 3, 2007, McGrath decided that he would terminate his employment
with Crump and begin employment with All Risks.

11       16.    Prior to June 3, 2007, Defendant McGrath decided that he would take advantage of
the proprietary information of Crump and use such information to the advantage of himself and
his new employer, All Risks.

14       17.    On or about May 31, 2007, after having decided that he would be leaving Plaintiff
Crump, and that he would be working for Defendant All Risks, Defendant McGrath, in violation
of the terms of this contract, and his obligations to Plaintiff, obtained information from Plaintiff
on expiration dates of policies, commissions, and customer renewal information. This
information was proprietary and confidential and of significant economic value to Plaintiff, and
would similarly have significant economic value to Defendant All Risks.

20       18.    On or about June 3, 2007, without complying with the minimum 15 days written
notice provision set forth in the Memorandum of Agreement, paragraph 16, McGrath abruptly
notified Crump that he was terminating his employment with Crump and immediately
commencing employment with a competitor, Defendant All Risks.

24       19.    Since June 4, 2007, Defendant McGrath has been an employee of Defendant All
Risk and has engaged in the conduct alleged herein below.

### III.

### FIRST CAUSE OF ACTION

### [Breach of Contract – Against Defendant McGrath]

20. Crump incorporates by reference herein the allegations of paragraph 1 through 19 above.

21. Pursuant to the express terms of the June 7, 1996 Memorandum of Agreement, as renewed at various times through and including January 1, 2007, McGrath had agreed to those express obligations noted above in paragraphs 10 through 14 with respect to the utilization of confidential information belonging to Crump.

22. Plaintiff is informed and believes, and on that basis alleges that McGrath breached a number of provisions of the June 7, 1996 Memorandum of Agreement, including but not limited to paragraph 10, paragraph 11, paragraph 13, paragraph 14, and paragraph 16 thereof.

23. In particular, McGrath improperly and unlawfully misappropriated and used confidential information belonging to Crump. Plaintiff is informed and believes, and on that basis alleges that that this information included the identity of persons, firms and corporations which had become customers or accounts of Crump.

24. Plaintiff is informed and believes, and on that basis alleges that that the information used by McGrath also included the source with which the insurance was placed, as well as the names of customers, policy expiration dates, policy terms, conditions and rates and familiarity with the customers' risk, all of which were agreed constituted confidential information belonging to Crump.

25. At no time did Crump give its written consent to McGrath to utilize any of the confidential information.

26. Plaintiff is informed and believes, and on that basis alleges that McGrath disclosed to his new employer, All Risks, the confidential information which belonged to Crump.

27. McGrath breached the June 7, 1996 Memorandum of Agreement in that he improperly and unlawfully took for his own use, and the use of his new employer, All Risks, records, files and lists as well as other materials which had been furnished to him as a Crump

DOCUMENT PREPARED ON RECYCLED PAPER

employee. Plaintiff is informed and believes, and on that basis alleges that that such information included confidential information belonging to Crump.

28. Plaintiff is informed and believes, and on that basis alleges that Defendant McGrath obtained and has used electronic versions of confidential information of Crump.

29. Plaintiff is informed and believes, and on that basis alleges that while still under the employ of Crump, Defendant McGrath engaged in business activities which were competitive with the work he performed at Crump, in violation of his obligations to Crump.

30. Plaintiff is informed and believes, and on that basis alleges that while still an employee of Crump, Defendant solicited Crump employees to cease their employment with Crump, and instead commence employment with McGrath's new employer, All Risks.

31. Notwithstanding the fact that McGrath had agreed that he would provide 15 days prior written notice to Crump should he wish to terminate the June 7, 1996 Memorandum of Agreement, Crump breached such provision and failed to provide timely written notice of his intent to terminate the relationship.

32. Plaintiff has performed each and every obligation imposed on it by the contract of the parties in accordance with the terms thereof, except to the extent that such performance was excused or prevented by the acts of defendant.

33. Plaintiff has been damaged by the various breaches of contract of McGrath in an amount which has not yet been ascertained. Plaintiff will seek leave of this Court to state the amount of its damages at such time as they are ascertained.

## IV.

## SECOND CAUSE OF ACTION

[Misappropriation Of Trade Secrets –

**Against Defendants McGrath, All Risks and Does 1-50.]**

34. Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 33 above.

35. During the course of his employment, Defendant McGrath had access to, and was provided various trade secrets which belonged to Plaintiff. These include, *inter alia*, client lists,

expiration lists, underlying client information, and information regarding co-employees.

36. The information provided to Defendant McGrath was provided to him so that he could perform his duties and obligations as an employee of Plaintiff. The information made known to Defendant McGrath constituted trade secrets within the meaning of California Civil Code Section 3426 *et seq*.

37. The information made known to Defendant McGrath had independent economic value and was not generally known to the public or to other persons who could obtain economic value from its disclosure or use.

38. At all times material hereto, Plaintiff took reasonable and appropriate efforts to maintain the secrecy of its trade secrets.

39. Plaintiff is informed and believes, and on that basis alleges Defendants McGrath, All Risks and Does 1-50 made use of the trade secrets of Plaintiff. Further, Defendants All Risks and Does 1-50 obtained economic benefit by the use of the Plaintiff's trade secret.

40. Defendants have been unjustly enriched in that they have obtained the economic value of the trade secrets of Plaintiff.

41. Plaintiff is informed and believes, and on that basis alleges that Defendants actions were willful and malicious in misappropriating the trade secrets of Plaintiff, such that exemplary damages may be awarded pursuant to Civil Code Section 3426.3.

42. Plaintiff has been damaged in an amount which is not presently known to Plaintiff. Plaintiff will amend this Complaint to set forth the amount of damages it sustained at such time as that amount is ascertained.

V.

### THIRD CAUSE OF ACTION

**[Breach Of Fiduciary Duty – Against Defendant McGrath]**

43. Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 42 above.

44. Defendant McGrath was a fiduciary of Plaintiff as a result of the position he held and with respect to the information provided to him such as client lists, expiration lists,

31369348.3 - 7 -

COMPLAINT

underlying client information, and information relating to employees of Plaintiff.

45. Defendant McGrath was obligated as a fiduciary to make use of the information provided to him solely in performing his obligation to Plaintiff.

46. Defendant McGrath breached his fiduciary duty to Plaintiff by, *inter alia*, supplying to a competitor, All Risks, the information identified hereinabove, and making use of that information to obtain form All Risk the benefits of that information and the business it generated.

47. Defendant McGrath breached his fiduciary duty to Plaintiff by using the information relating to employees of Plaintiff in order to solicit such employees to leave Plaintiff Crump and to join Defendant All Risks.

48. As a result of the breach of fiduciary duty, Plaintiff has been damaged in an amount not yet ascertained. Plaintiff will amend this Complaint to set forth such amount when the amount has been ascertained.

49. The conduct of Defendant McGrath was undertaken with malice and oppression with the desire to harm Plaintiff such that Plaintiff is entitled to the award of punitive damages from Defendant McGrath.

VI.

## FOURTH CAUSE OF ACTION

[Intentional Interference With Prospective Economic Advantage (Clients) – Against Defendants McGrath and All Risks and Does 1-50]

50. Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 49 above.

51. Plaintiff has a prospective economic advantage with respect to those of its customer known to McGrath, to whom Plaintiff had provided insurance services.

52. Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks and Does 1-50 were aware of the fact that Plaintiff had a continuing prospective economic advantage with respect to Plaintiff's clients who were known to Defendant McGrath. This prospective economic advantage was derived from, in part, the confidential information of

Crump.

53. Plaintiff had a reasonable expectation and likelihood that it would continue to obtain the economic advantage arising from its preexisting relationships between Plaintiff and its clients who were serviced or otherwise known to Defendant McGrath. Absent the conduct of Defendants alleged herein, the economic relationship would have continued.

54. Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks and Does 1-50 intended to interfere with that prospective economic advantage and did so by making use of the confidential information provided to it by Defendant McGrath.

55. The actions of Defendants actually caused the disruption of the economic relationship between Plaintiff and some of its customers who were known to Defendant McGrath.

56. As a result of that conduct, Plaintiff has been damaged in an amount not yet ascertained. Plaintiff will seek leave to amend this Complaint at such time as the amount of damages are ascertained.

57. The conduct of Defendant All Risks and Does 1-50 was undertaken with malice and oppression with the desire to harm Plaintiff such that Plaintiff is entitled to the award of punitive damages from Defendant All Risks.

VII.

**FIFTH CAUSE OF ACTION**

[Negligent Interference With Prospective Economic Advantage (Clients) – Against Defendants McGrath and All Risks and Does 1-50]

58. Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 49 above.

59. Plaintiff has a prospective economic advantage with respect to those of its customer known to McGrath, to whom Plaintiff had provided insurance services.

60. Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks and Does 1-50 were aware of the fact that Plaintiff had a continuing prospective economic advantage with respect to Plaintiff's clients who were known to Defendant McGrath. This prospective economic advantage was derived from, in part, the confidential information of

1  Crump.

2  61.  Plaintiff had a reasonable expectation and likelihood that it would continue to
3  obtain the economic advantage arising from its preexisting relationships between Plaintiff and its
4  clients who were serviced or otherwise known to Defendant McGrath. Absent the conduct of
5  Defendants alleged herein, the economic relationship would have continued.

6  62.  Plaintiff is informed and believes, and on that basis alleges that Defendant All
7  Risks and Does 1-50 knew that if they did not act with reasonable care, their conduct would
8  interfere with the prospective economic advantage.

9  63.  Defendants did not act with due care, but instead acted negligently in that they did
10  not take appropriate steps to insure that Defendant McGrath did not misuse the proprietary
11  information of Crump by McGrath.

12  64.  The actions of Defendants actually caused the disruption of the economic
13  relationship between Plaintiff and some of its customers who were known to Defendant McGrath.

14  65.  As a result of that conduct, Plaintiff has been damaged in an amount not yet
15  ascertained. Plaintiff will seek leave to amend this Complaint at such time as the amount of
16  damages are ascertained.

## VIII.

## SIXTH CAUSE OF ACTION

[Intentional Interference With Prospective Economic Advantage (Employees) – Against Defendants McGrath and All Risks and Does 1-50]

21  66.  Plaintiff incorporates herein by reference the allegations in paragraphs 1 through
22  49 above.

23  67.  Plaintiff is informed and believes, and on that basis alleges that Defendant All
24  Risks and Does 1-50 were aware of the fact that Plaintiff had a continuing prospective economic
25  advantage with respect to its employees who were known to Defendant McGrath.

26  68.  Plaintiff had a reasonable expectation and likelihood that it would continue to
27  obtain the economic benefits provided by those employees, arising from its preexisting
28  employment relationships.

69. Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks and Does 1-50 intended to interfere with that prospective economic relationship existing with Plaintiff's employees, and did so by making use of the confidential information provided to it by Defendant McGrath with regard to such employees.

70. Plaintiff is informed and believes, and on that basis alleges that as a result of the actions of Defendants, the employees were induced to terminate their employment with Plaintiff and commence employment with Defendant All Risks.

71. As a result of that conduct, Plaintiff has been damaged in an amount not yet ascertained. Plaintiff will seek leave to amend this Complaint at such time as the amount of damages are ascertained.

72. The conduct of Defendant All Risks and Does 1-50 was undertaken with malice and oppression with the desire to harm Plaintiff such that Plaintiff is entitled to the award of punitive damages from Defendant All Risks.

## IX.

## SEVENTH CAUSE OF ACTION

**[Negligent Interference With Prospective Economic Advantage (Employees) – Against Defendants McGrath and All Risks and Does 1-50]**

73. Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 49 above.

74. Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks and Does 1-50 were aware of the fact that Plaintiff had a continuing prospective economic advantage with respect to its employees who were known to Defendant McGrath.

75. Plaintiff had a reasonable expectation and likelihood that it would continue to obtain the economic benefits provided by those employees, arising from its preexisting employment relationships.

76. Plaintiff is informed and believes, and on that basis alleges that Defendant All Risks and Does 1-50 knew that if they did not exercise due care, that their conduct would interfere with that prospective economic relationship existing with Plaintiff's employees.

1  77.  Defendants acted negligently in that they did not take appropriate steps to insure that no improper use of Plaintiff's proprietary information about its employees was use in order to seek to induce such employees to terminate their relationship with Plaintiff. Instead, confidential information provided to Defendant All Risks by Defendant McGrath with regard to such employees was used.

78.  Plaintiff is informed and believes, and on that basis alleges that as a result of the actions of Defendants, the employees were induced to terminate their employment with Plaintiff and commence employment with Defendant All Risks.

79.  As a result of that conduct, Plaintiff has been damaged in an amount not yet ascertained. Plaintiff will seek leave to amend this Complaint at such time as the amount of damages are ascertained.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For damages according to proof;

2. For punitive damages;

3. For appropriate injunctive relief preventing the use by Defendants of Plaintiffs proprietary information;

4. For costs of suit herein;

5. For such other and further relief as the Court deems just and proper.

Dated: August 30, 2007

FULBRIGHT & JAWORSKI L.L.P.
DOUGLAS W. STERN

By _____
DOUGLAS W. STERN
Attorneys for Plaintiff CRUMP INSURANCE SERVICES, INC.

# EXHIBIT 1

MEMORANDUM OF AGREEMENT

MEMORANDUM OF AGREEMENT dated _June 7_, 1996 between Crump E&S of San Francisco Insurance Services, Inc., a California Corporation (hereinafter "Crump"), and Michael P. McGrath (hereinafter "Employee").

INTRODUCTION

This Agreement is intended to set forth the terms and conditions of the employment relationship between Crump and Employee. This relationship is based on the agreement and understanding of the parties that Crump is the owner of the Crump Business relating to Crump Customers as these terms are used below, and that these customers comprise a substantial part of the goodwill of Crump. To protect the business and goodwill of Crump and the confidential information belonging to Crump, the parties have agreed to certain limitations on competition and disclosure of confidential information following termination of employment. Such limitations relate solely to Crump Business and Crump Customers, however, and are intended to permit Employee to remain in the insurance and brokerage business, if he so desires.

AGREEMENTS

Crump and Employee agree as follows:

1. **EMPLOYMENT COMPENSATION** - Crump agrees to employ Employee to solicit, place, and service property or casualty business, during the term of the Agreement and to pay Employee a base salary of $125,000 per year, with future adjustments in accordance with Crump base salary guidelines. Base salary shall be payable in accordance with Crump regular payroll procedures, and may be changed only by written agreement of the parties.

2. **PERFORMANCE BY EMPLOYEE** - Employee agrees to devote his entire business time and effort to furtherance of the business of Crump and to perform faithfully to the best of his ability all assignments of work given to him by Crump.

3. **TERM** - The term of this Agreement shall commence as of the date of this Agreement and shall continue through December 31, 1997, at which time this Agreement will be extended automatically to June 30, 1999, if the combined Net Retained Revenue of Robert Lindner, Employee, and Paul Farbstein ("the Team") exceeds $1,500,000 for the time period July 1, 1996, through December 31, 1997. "Net Retained Revenue" shall be defined as brokerage actually received by Crump, less any return brokerage. This Agreement is at all times subject to earlier termination in accordance with paragraph 7 below.

4.   BONUS -

   a.   <u>Signing Bonus</u>. Employee shall receive a one-time signing bonus of $75,000, payable with the first payroll check to be received by Employee. This signing bonus shall be subject to repayment on a pro-rata basis should Employee leave the employment of Crump at his own election, or for any circumstance outlined in paragraph 7 below, prior to July 1, 1999.

   b.   <u>Annual Bonus</u>. Employee shall participate in an annual bonus pool based on the Net Retained Revenue credited to the Team Employee's share of this annual bonus pool shall be determined each year by, and at the discretion of, Employee's immediate supervisor.

5.   **BENEFITS** - Employee shall be eligible to participate at the level of Vice President in any benefit plans and programs in effect from time to time and as amended by Crump, including annual leave entitlement established by Crump, including three weeks vacation which may be carried over from year to year.

6.   **EXPENSES** - Employee will receive reimbursement for all ordinary and necessary business expenses in accordance with Crump's management guide. Employee shall receive an annual automobile allowance of $6,000, payable in equal semi-monthly installments with the Employee's regular payroll check, and shall also be reimbursed for office parking fees.

7.   **TERMINATION** - The term of this Agreement shall be as stated in Paragraph 3. <u>Term</u>. unless terminated by:

   a.   Employee's death or disability (disability, for the purpose of this Agreement, means the inability of Employee due to illness, accident or other physical or mental incapacity, to perform the duties and services provided for hereunder) for a period of ninety (90) consecutive days; or

   b.   Discharge of Employee for cause, which, as used herein, shall mean if Employee: (i) violates any provision of this Agreement; (ii) performs any act which in the judgment of the Crump causes or has the potential to cause harm, injury or damage of any sort to Crump; or (iii) refuses or fails to carry out a resolution of the Board of Directors of Crump, other than for reasons of death or disability as previously described; or

   c.   Conviction of Employee of a misdemeanor or felony; or

   d.   Dereliction of duty, evidenced by an unexplained or unexcused failure of Employee to attend work for a period of ten (10) consecutive work days.

   In the event of termination of this Agreement for any of the reasons set forth in this Paragraph 7, Crump shall be responsible to pay or to provide Employee (or the Employee's lawfully designated beneficiary or to Employee's estate in the event of death) only those portions of any compensation, and/or other benefits due up to and including the effective date of termination of the Agreement, except for those benefits which survive termination pursuant to law.

2

Regardless of the reason, cause or occasion for termination, the provisions of Paragraph 8, 10, 11, 12, 13, and 14 shall survive the termination of employment and shall be and remain valid, binding and enforceable after termination.

8.  **CRUMP BUSINESS** - All business and fees including insurance, bond, risk management, self-insurance and other services (collectively, the "Crump Business"), produced or transacted through the efforts of Employee shall be the sole property of Crump Group, Inc. (Crump Group, Inc. and its subsidiary corporations and departments, are herein referred to as "Crump Group"). Employee shall have no right to share in any commission or fee resulting from the conduct of such business other than as compensation referred to in paragraphs 1 and 4.

9.  **PREMIUMS AND COLLECTIONS** - Premiums, commissions or fees on the Crump Group Business produced or transacted through the efforts of Employee shall be invoiced to the customer or account by one of the subsidiaries of Crump Group. All checks or bank drafts received by Employee from any customer or account shall be made payable to such company, and all premium, commissions or fees shall be collected by Employee in the name of and on behalf of such company.

10. **CONFIDENTIAL INFORMATION** - Employee acknowledges that, in the course of and as a result of his employment hereunder, he will become acquainted with confidential information belonging to Crump Group. This information relates to persons, firms, and corporations which are or become customers or accounts of Crump Group during the term of the Agreement ("Crump Customers"), and sources with which insurance is placed, including but not limited to, the names of customers, policy expiration dates, policy terms, conditions, and rates, familiarity with customer's risks. Employee agrees that during his employment hereunder he will not, without the written consent of Crump, disclose or make any use of such confidential information except as may be required in the course of his employment hereunder. Employee further agrees that upon termination hereunder, and for a period of one year thereafter, he will not disclose or make any use of such confidential information without the prior written consent of Crump.

3

11. **PROTECTION OF CRUMP PROPERTY** - All records, files, manuals, lists of customers, blanks, forms materials, supplies, computer programs, and other materials furnished to the Employee by Crump Group shall be and remain the property of Crump Group. Employee shall be deemed the bailee thereof for the use and benefit of Crump and shall safely keep and preserve such property, expect as consumed in the normal business operation of Crump Group. Employee acknowledges that this property is confidential and is not readily accessible to Crump's competitors. Upon termination of employment hereunder, the Employee shall immediately deliver to Crump or its authorized representative all such property, including all copies, remaining in the Employee's possession or control.

12. **NONCOMPETITION FOR CERTAIN CRUMP CUSTOMERS** - Upon termination of Employee's employment hereunder, Employee agrees that for a period of two years following such termination he will not, without the written consent of Crump, directly or indirectly, solicit insurance wholesale brokerage business for any Account, either personally or in collaboration with others. As used in this Paragraph 12, "Account" shall refer to those insurance or policies that were either: (i) carried on the books of Crump or any subsidiary of Crump Group at any time during the twelve-month period prior to Employee's termination and with respect to which Employee personally performed service or employment duties during the twelve-month period prior to Employee's termination; or (ii) those potential accounts of Crump or any subsidiary of Crump Group, with regard to which Employee personally worked to obtain, secure or develop during the twelve-month period prior to Employee's termination. As used in this Paragraph 12, "insurance wholesale brokerage business", is limited to the lines of insurance coverage and other services that: (i) Crump or any subsidiary of Crump Group placed or provided for such Account during the twelve-month period prior to Employee's termination or (ii) with regard to which Employee had personally done any work during the twelve-month period prior to Employee's termination in connection with any attempt or anticipated attempt by Crump or any subsidiary of Crump Group to provide or place.

13. **ORGANIZING COMPETITIVE BUSINESSES** - Employee agrees that so long as he is working for Crump he will not engage in business activity competitive with work he performs for Crump.

14. **SOLICITING COMPANY EMPLOYEES** - Employee agrees that he will not, for a period of one year following termination of employment with Crump, solicit any of Crump Group employees to work for any other competitive company.

15. **ENTIRE AGREEMENT, SEVERABILITY** - This Agreement sets forth the entire agreement between the Employee and Crump, and supersedes any and all prior agreements and understandings with respect to such employment. If any term of this Agreement is rendered invalid or unenforceable by judicial, legislative or administrative action, the remaining provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

16. **VOLUNTARY TERMINATION BY EMPLOYEE** - This Agreement (other than paragraphs 10, 11, 12, 13, and 14 hereof) may be terminated by Employee upon fifteen (15) days prior written notice given to Crump, or by other written agreement signed by both parties.

4

17. **INJUNCTIVE RELIEF** - This Agreement may be enforced by an injunction by any competent court enjoining and restraining any violation or threatened violation hereof without Crump being required to show any actual damage or to post any bond or other security.

18. **NOTICES** - All notices and consents provided for herein and all legal process shall be validly given, made or served, it in writing and delivered personally or sent by United States certified or registered mail, postage pre-paid, return receipt requested,

        If to Employer:

                Crump Insurance Services, Inc.
                7557 Rambler Road, Suite 350
                Dallas, Texas 75231-4163
                ATTN: Marcus Payne

        If to Employee:

                Michael P. McGrath
                552 Danby Court
                Petaluma, California 94954

19. **GOVERNING LAW** - This Agreement shall be construed in accordance with the laws of the State of California.

20. **NO WAIVER** - No failure of Employee to exercise any right, power or privilege given to Crump under this Agreement or no failure to insist upon strict compliance by Employee with any agreement, covenant, warranty or other obligation under this Agreement or no custom or practice of the parties at variance with the terms hereof shall be construed as waiver or relinquishment of any right granted hereunder to Crump. Waiver by Crump of any particular default by Employee shall not affect or impair Crump's right, power or privilege in respect to any subsequent default of the same or of a different nature, nor shall any delay or omission of Crump to exercise any right, power or privilege arising from such default affect or impair Crump's right, power or privilege as to such default or any subsequent default.

21. **ASSIGNMENT** - This Agreement shall not be assignable by Employee, but may, with the prior consent of Employee, be assigned by Crump to any of the subsidiaries of Crump Group, Inc. and shall be binding upon and inure to the benefit of Crump's successors and assigns.

22. **BINDING NATURE OF AGREEMENT** - This Agreement shall inure to the benefit of and be binding upon and enforceable against the heirs, legal representatives and assigns of Employee and the successors and assigns of Crump.

IN WITNESS WHEREOF, the parties hereto by their duly authorized representatives have executed this Agreement as of the date first above written.

                CRUMP E&S OF SAN FRANCISCO
                INSURANCE SERVICES, INC.

By: *[signature: Marcus Payne]*
Its:   Sr. Vice President

By: *[signature: Michael McGrath]*
      Michael P. McGrath

6