# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                       ---oOo---
 4   CRUMP INSURANCE SERVICES,  )
     INC.,                      )
 5                              )
                Plaintiff,      )
 6                              )
     vs.                        )   No. C-07-4636 MMC
 7                              )
     MICHAEL P. McGRATH, an     )
 8   individual, ALL RISKS, LTD.,)
     a corporation, and Does 1  )
 9   through 50, inclusive,     )
                                )
10              Defendants.     )
     _____)
11
12
13
14            DEPOSITION OF MICHAEL P. McGRATH
15                       Volume II
16              (Pages 200 through 274)
17                    June 10, 2008
18
19
20            Taken before JANE GROSSMAN
21                    CSR No. 5225
22
23         JANE GROSSMAN REPORTING SERVICES
               Certified Shorthand Reporters
24             1939 Harrison Street, Suite 460
                Oakland, California 94612
25                    (510) 444-4500
```

**CERTIFIED COPY**
JG  Jane GROSSMAN
RS  REPORTING Services

```
 1   conclusion. It's vague, ambiguous.
 2           MR. ASKANAS:  Q.  What I mean by a "duty to
 3   loyalty" is to act in Crump's best interests.
 4       A.  While I was where?
 5       Q.  Working at Crump.
 6       A.  Yes.
 7       Q.  You seem unequivocal about that.
 8       A.  Why wouldn't I be?
 9       Q.  Is it fair to say that in May 2007 -- would it
10   be accurate to say in May 2007, you assisted All Risks
11   in recruiting Cynthia Marty?
12           MS. RUTTER:  Objection.  Calls for a legal
13   conclusion; it's vague, ambiguous.
14           THE WITNESS:  Would it be accurate?
15           MR. ASKANAS:  Q.  Yes.
16       A.  No, that's not accurate.
17       Q.  How much have you been compensated at
18   All Risks including salary, signing bonus, any other
19   bonuses or benefits?
20           MS. RUTTER:  I instruct the witness not to
21   answer.
22           That's private information.
23           MR. ASKANAS:  Compensation at a competitor
24   may constitute unjust enrichment under Morlife,
25   M-o-r-l-i-f-e.
```

```
 1  intelligent.
 2          How were you paid when you joined All Risks?
 3   A.   Salary.
 4   Q.   Was there any other component other than
 5  salary?
 6   A.   No.
 7   Q.   Was there any discussion with regard to how
 8  you would receive your salary or what your salary would
 9  be based on?
10   A.   No.
11   Q.   Was any of your compensation determined by the
12  amount of revenues you generated?
13   A.   No.
14   Q.   Was any of Ms. Marty's compensation determined
15  by any of the revenues that you generated?
16          MS. RUTTER:  Lacks foundation, calls for
17  speculation.
18          THE WITNESS:  Don't know.
19          MR. ASKANAS:  Q.  How was her compensation
20  determined -- do you know? -- when she joined All Risks?
21   A.   I don't know.
22          MS. RUTTER:  Objection.  Lacks foundation,
23  calls for speculation.
24          MR. ASKANAS:  Q.  While at Crump, did you have
25  any understanding as to what restrictions you had
```

```
 1   And I just laughed about it.
 2       Q.  And is that the only reason why you didn't use
 3   that information when you moved to All Risks for the
 4   Alecta business, because the quote was just wrong?
 5       A.  I wasn't -- why I used it?
 6       Q.  You had a quote, right, and you thought the
 7   quote was terrible?
 8       A.  Yes.
 9       Q.  If the quote had been accurate, would you have
10   used it when you moved to All Risks?
11           MS. RUTTER:  Calls for speculation, vague and
12   ambiguous.
13           THE WITNESS:  If it was accurate?
14           MR. ASKANAS:  Q.  Yes.  If it was something
15   presentable, if you thought it was a good quote?
16       A.  Oh, if it was a good quote?
17       Q.  Yes.
18       A.  And I was able to achieve a broker-of-record
19   letter while I was at All Risks?
20       Q.  Yes.
21       A.  Sure, I would have used it; absolutely.
22       Q.  Even though the quote had been sent to you at
23   Crump?
24           MS. RUTTER:  It's not proprietary information,
25   Counsel.  That's the whole point.
```

```
 1            MR. ASKANAS:  Q.  I mean, you wouldn't have
 2   had any problem using --
 3            (Addressing counsel) Don't testify.
 4            MS. RUTTER:  It's just so ridiculous, it's
 5   amazing.
 6            MR. ASKANAS:  Well, it's not -- we're going to
 7   have to live together for quite a while because the case
 8   is not settling, despite your hope that it will.  So, we
 9   might as well --
10            MS. RUTTER:  My hope that it will?
11            MR. ASKANAS:  We might as well be civil to
12   each other.
13            MS. RUTTER:  Believe me, I have every reason
14   to know that this case will continue.  So, I'm prepared
15   to do that.
16            MR. ASKANAS:  Okay, good.
17            MS. RUTTER:  I don't know if there's a
18   question pending.
19            MR. ASKANAS:  Q.  Let me ask you this --
20            MS. RUTTER:  It's been a long day.
21            MR. ASKANAS:  Q.  Let me ask you this:  Do you
22   have an understanding of what All Risks considers
23   confidential information?
24            MS. RUTTER:  Objection to the extent it calls
25   for a legal conclusion.
```

DEPOSITION OF MICHAEL P. MCGRATH - VOLUME II

268

1    MR. ASKANAS: I'm just asking him.
2    Q.  Let me ask you this: When you were at Crump,
3  did you have any idea what Crump considered to be
4  confidential information?
5    MS. RUTTER: Same objections.
6    THE WITNESS: No.
7    MR. ASKANAS: Q.  Or what they considered to
8  be proprietary information?
9    MS. RUTTER: Same objections.
10    THE WITNESS: No.
11    MR. ASKANAS: Q.  So, I want to make sure I'm
12  clear here.
13    As a Crump employee, you have no idea what
14  Crump considers to be -- what Crump considered to be
15  confidential information?
16    MS. RUTTER: Given that it was all public,
17  that would be correct.
18    MR. ASKANAS: Q.  Is that your testimony
19  today?
20    MS. RUTTER: Objection. Calls for a legal
21  conclusion, vague, ambiguous, and to the extent it's
22  cumulative.
23    THE WITNESS: Repeat your question, please.
24    MR. ASKANAS: Q.  While you were a Crump
25  employee, is it your testimony today, Mr. McGrath, that

DEPOSITION OF MICHAEL P. McGRATH - VOLUME II

270

```
 1   you did not know what Crump considered to be
 2   confidential information?
 3           MS. RUTTER:  Objection to the extent it's
 4   overbroad, it's cumulative, and to the extent it calls
 5   for a legal conclusion.
 6           MR. ASKANAS:  Q.  You can answer the
 7   question.
 8       A.   I'm sorry.  "Is it your testimony" --
 9           MR. ASKANAS:  (Addressing the reporter) Can
10   you repeat the question to the witness?
11           (Whereupon, the record was read as follows:
12           "Question:  While you were a Crump
13            employee, is it your testimony today,
14            Mr. McGrath, that you did not know what
15            Crump considered to be confidential
16            information?")
17           THE WITNESS:  Correct, I did not know what was
18   confidential information.
19           MR. ASKANAS:  Q.  Now, your attorney just
20   testified that -- she said it was not confidential
21   information because it was all public record, that it
22   was all publicly available.
23           Was that your understanding, that none of this
24   was confidential information because it was all publicly
25   available?
```

DEPOSITION OF MICHAEL P. McGRATH - VOLUME II

271

1   MS. RUTTER: None of what?

2   It's vague and ambiguous.

3   THE WITNESS: As far as information?

4   MR. ASKANAS: Q. Any information. That Crump
5   had no confidential information because any information
6   it had was all publicly available. That's what your
7   attorney just testified.

8   A. Everything is public.

9   Q. So, based on that, there is no confidential
10  information at Crump? That's your testimony?

11  MS. RUTTER: It's overbroad. It calls for a
12  legal conclusion.

13  THE WITNESS: Correct.

14  MR. ASKANAS: Q. All right. And is that true
15  at All Risks also?

16  MS. RUTTER: Same objections.

17  THE WITNESS: I would think so, yeah.

18  MR. ASKANAS: Q. All Risks has no
19  confidential information? It's all publicly available?
20  Is that your testimony?

21  MS. RUTTER: It's overbroad; it's vague and
22  ambiguous; it calls for a legal conclusion.

23  MR. ASKANAS: Q. Is that your testimony
24  today?

25  A. Yeah, I don't think anything is confidential.

```
 1                  CERTIFICATE OF REPORTER

 2          I, JANE GROSSMAN, a Certified Shorthand

 3   Reporter, hereby certify that the witness in the

 4   foregoing deposition was by me duly sworn to tell the

 5   truth, the whole truth, and nothing but the truth in the

 6   within-entitled cause;

 7          That said deposition is a true record and was

 8   taken in shorthand by me, a disinterested person, at the

 9   time and place therein stated, and that the testimony of

10   said witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision;

12          That before completion of the deposition,

13   review of the transcript [X] was [ ] was not requested.

14   If requested, any changes made by the deponent (and

15   provided to the reporter) during the period allowed are

16   appended hereto.

17          I further certify that I am not of counsel or

18   attorney for any of the parties to the said deposition,

19   nor in any way interested in the events of this cause,

20   and that I am not related to any of the parties thereto.

21

22          Dated:  June 19, 2008

23

24          _____

25          JANE GROSSMAN, CSR No. 5225
```

DEPOSITION OF MICHAEL P. McGRATH - VOLUME II