STEPHEN J. HIRSCHFELD (SBN 118068)
JOHN F. BAUM (SBN 148366)
DENA L. NARBAITZ (SBN 176556)
ANN E. SOTER (SBN 229838)
CURIALE DELLAVERSON HIRSCHFELD
  & KRAEMER, LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendants
MICHAEL P. McGRATH and ALL RISKS, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUMP INSURANCE SERVICES, INC.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL P. McGRATH, an individual,<br>ALL RISKS, LTD., a corporation, and<br>Does 1 through 50, inclusive,<br><br>　　　　　Defendant. | Case No. C-07-4636 MMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:**　　October 10, 2008<br>**Time:**　　9:00 a.m.<br>**Judge:**　　Honorable Maxine M. Chesney<br>**Ctrm:**　　7 |

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on October 10, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the District of Northern California, Courtroom 7, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Maxine M. Chesney, presiding, Defendants Michael P. McGrath ("McGrath") and All Risks, Ltd. ("All Risks") (collectively "Defendants") will move this court for summary judgment, or alternatively summary adjudication, as to the causes of action set forth in Plaintiff Crump Insurance Services, Inc.'s ("Plaintiff" or "Crump") Complaint in this action. This Motion will be made pursuant to Federal Rule of Civil Procedure Rule 56.

Defendants request that this Court dismiss Plaintiff's Complaint in its entirety, or alternatively dismiss individual causes of action as follows:

A.   **Plaintiff's Second Cause of Action for Misappropriation of Trade Secrets against McGrath and All Risks must be dismissed because:**

    1.   Plaintiff cannot establish that any information was a trade secret; or, alternatively,

    2.   Plaintiff cannot establish that either McGrath or All Risks misappropriated any alleged trade secret.

B.   **Plaintiff's First Cause of Action for Breach of Contract Against McGrath must be dismissed because:**

    1.   The Memorandum of Agreement ("MOA") was cancelled and was never lawfully renewed; or, alternatively,

    2.   The MOA is illegal on its face in violation of California public policy; or, alternatively,

    3.   McGrath did not breach any terms of the MOA.

C.   **Plaintiff's Third Cause of Action for Breach of Fiduciary Duty against McGrath must be dismissed because:**

    1.   Plaintiff cannot show that McGrath owed a fiduciary duty to Plaintiff; or, alternatively,

    2.   Plaintiff cannot show that Plaintiff breached this duty.

D.   **Plaintiff's Fourth Cause of Action for Intentional Interference with**

1

Curiale Dellaverson Hirschfeld & Kraemer, LLP
Attorneys At Law
San Francisco

**Prospective Economic Advantage (Clients) against McGrath and All Risks must be dismissed because:**

    1.  Plaintiff cannot show an intentional and independently wrongful act on the part of McGrath or All Risks.

**E.    Plaintiff's Fifth Cause of Action for Negligent Interference With Prospective Economic Advantage (Clients) against McGrath and All Risks must be dismissed because:**

    1.  Plaintiff cannot show that Defendants engaged in wrongful conduct.

**F.    Plaintiff's Sixth Cause of Action for Intentional Interference With Prospective Economic Advantage (Employees) against McGrath and All Risks must be dismissed because:**

    1.  Plaintiff cannot show an intentional and independently wrongful act on the part of McGrath or All Risks.

**G.    Plaintiff's Seventh Cause of Action for Negligent Interference With Prospective Advantage (Employees) against McGrath and All Risks must be dismissed because:**

    1.  Plaintiff cannot show that Defendants engaged in wrongful conduct.

This Motion is supported by the Memorandum of Points and Authorities, the Affidavits of Dena L. Narbaitz and Michael P. McGrath and any exhibits attached thereto, the Complaint, the complete file and record in this action and such oral argument as may be presented at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Crump, one of the largest wholesale insurance brokerage firms in the country, reacted negatively to the lawful recruitment of a successful employee, former broker Defendant McGrath, and filed this lawsuit against a much smaller competitor, Defendant All Risks. A review of the undisputed material facts proves that there was no unlawful conduct here, simply fair competition, despite Crump's claims of misappropriation of trade secrets, breach of contract, breach of fiduciary duty and improper solicitation of a single Crump employee.

The nature of the business relationship among the parties and the particularities of the wholesale insurance industry provide a critical background to understand the lack of merit in

2

DEFENDANTS' MOTION FOR MSJ
CASE NO. C-07-4636 MMC

1  Crump's claims.   Crump and All Risks, as wholesale insurance brokerage firms,  employ brokers

2  (like Co-Defendant McGrath) who obtain insurance quotes for potential clients (retail agents)

3  seeking insurance on behalf of various entities (the insureds).  In other words, the independent

4  retail agent has a client company that needs liability insurance and decides which wholesale

5  brokerage company (Crump or All Risks or another competitor) will sell the insurance offered by

6  various insurance companies.

7      First, Plaintiff Crump alleges misappropriation of trade secrets by Defendants.  The

8  allegation primarily fails because *all of the information at issue – retail agent contact*

9  *information, insurance policy terms and employee payment information – are not trade secrets.*

10  This information can be obtained directly from retail agents, other public sources (like a

11  published, industry directory or the Internet), or is generally known in the industry.  Crump

12  admits that insurance brokers, like McGrath, use information that is generally known in the

13  industry and available to all brokers in the industry.  None of the information necessary for

14  McGrath to perform as a Crump broker or that he needed at All Risks was a "trade secret" or

15  "proprietary information."  Likewise, Crump's payment structure is generally known in the

16  industry.  The allegation also fails because Defendants did not misappropriate any trade secrets.

17  McGrath did not take or disclose any Crump or co-employee information to All Risks.

18      Second, Crump alleges that McGrath breached an agreement not to compete against

19  Crump and solicit its clients.  This allegation fails because *Crump* actually terminated the 1996

20  Memorandum of Agreement ("MOA") containing the non-compensation language in 2000.  Even

21  more importantly, the MOA is void on its face; it contains a broad non-competition clause

22  prohibiting McGrath from soliciting clients, even where trade secrets are not involved.  As the

23  California Supreme Court just confirmed in *Edwards v. Arthur Anderson LLP*, 2008 Cal. LEXIS

24  9618, 20-21 (Cal. S.Ct. Aug. 7, 2008), this type of contract is void and contrary to public policy.

25  In addition, even if the MOA was enforceable, McGrath did not breach any terms of the MOA.

26      Third, Crump alleges that McGrath breached his fiduciary duties to the company.

27  However, McGrath had no fiduciary obligation to Crump.  He was not a partner, not an officer,

28  not a director and not even the head of the office at which he worked.  He was a broker without

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

1   any policy making or management authority. Even if a fiduciary duty attached, McGrath did not

2   engage in wrongful conduct to breach such a duty.

3       Fourth, Crump alleges that Defendants improperly solicited another Crump broker,

4   Cynthia Marty, to join All Risks. To the contrary, All Risks separately recruited Marty, who

5   made the independent decision to leave Crump without consulting McGrath and for her own

6   career advancement. There was no unlawful solicitation.

7       Although styled in seven separate causes of action, Plaintiff Crump's claims fail because

8   there is no wrongful conduct here. Crump initiated this classic "David and Goliath" lawsuit as an

9   attempt to intimidate a competitor who had lawfully recruited two brokers, including McGrath,

10  who had recently been named "Broker of the Year" at Crump. Defendants will show the absence

11  of at least one necessary element of every cause of action, warranting the dismissal of Crump's

12  misplaced lawsuit.

13  **II.    FACTUAL BACKGROUND**

14      **A.    Crump Is A Wholesale Insurance Brokerage Firm Whose Brokers Rely On
            Public Information To Perform Their Duties**

15      Plaintiff Crump is a wholesale insurance brokerage firm that – through its brokers –

16  obtains excess, surplus, and specialty insurance (e.g., commercial earthquake insurance) for its

17  clients. (Deposition of Glenn Hargrove (Hargrove Depo.), 20:6-20, 34:13-20; Deposition of John

18  Jennings (Jennings Depo.), 16:4-17:1, 18:11-14.)[1] Crump's clients are retail agents who are in

19  turn seeking insurance for their clients, the insured. (Hargrove Depo., 20:12-20; Jennings Depo.,

20  12:19-22, 16:4-17:1; Deposition of Rick McDonough (McDonough Depo.), 27:24-28:3;

21  Deposition of Peter Scott (Scott Depo.), Vol. 1, 20:13- 21:11.)[2] **(FACT 5)** Retail agents are third

22  parties who do not work exclusively with one wholesale insurance brokerage firm. (McDonough

23  Depo., 27:24-28:13; Hargrove Depo., 21:11-17; Jennings Depo., 13:5-11.) **(FACT 6)**

---

[1] All depositions excerpts are attached to the Affidavit of Dena L. Narbaitz. Glen Hargrove was the President and CEO at Crump from August 2004 to January 2008. (Hargrove Depo.13:19-24.) **(FACT 1)** John Jennings is the current President and CEO at Crump. (Jennings Depo., 10:9-11.) **(FACT 2)**

[2] Rick McDonough was an Executive Vice President at Crump. (McDonough Depo., 7:11-12.) **(FACT 3)** Peter Scott is Manager of the San Francisco office at Crump. (Scott Depo., 17:16-22.) **(FACT 4)**

DEFENDANTS' MOTION FOR MSJ
CASE NO. C-07-4636 MMC

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The names and contact information for retail agents is publicly available and generally known in the wholesale insurance industry.  (Jennings Depo., 13:1-16, 15:6-16:3; McDonough, 27:24-31:17 and Ex. 3; Hargrove Depo., 21:18-22:24.) (**FACT 7**)  Indeed, Crump's Manager of the San Francisco office readily admits that retail agent contact information is not only published in Kirschner's Insurance Directories (a publicly available industry-specific directory), but that it can also be found by publicly available methods such as dialing 411 or through the Google Internet site. (Scott Depo., 83:5-84:17; 17:16-22.) (**FACT 8**)  Crump's current President and CEO admits information concerning retail agents is available to anyone in the industry who "does the homework" to find the information.  (Jennings Depo., 15:6-16:3.) (**FACT 9**)

Most insurance policies expire after one year and the retail agent can go to any wholesaler or an insurance carrier directly for renewal policies. (Scott Depo., 136:17-18; 137:2-7.) (**FACT 10**)  In this relationship-based business, retail agents make the decision as to which wholesaler brokers they will provide information to and seek insurance placements from. (Scott Depo., 27:7-17; Hargrove Depo., 31:14-32:3, 32:9-20; McDonough Depo., 75:19-76:2.) (**FACT 11**)  In doing so, retail agents generally provide information such as policy expiration dates, premiums, terms and conditions of the policy and financial information to brokers. (McDonough Depo., 31:23-34:9; Scott Depo., Vol. 1, 24:23-26:5.) (**FACT 12**)  All of the information that a broker in this industry needs to do his job is obtained from the retail agent, through public records found on the Internet or in industry publications. (McDonough Depo., 31:18-34:6; Jennings Depo., 16:17-17:1; Hargrove Depo., 30:1-11.) (**FACT 13**)

### B.    McGrath's Tenure At Crump And Use Of Non-Confidential Information While An Employee of Crump

McGrath began working as a broker at Crump E&S of San Francisco Insurance Services, Inc. in June 1996. (Deposition of Michael McGrath (McGrath Depo.), 26:22-23.) (**FACT 14**) Prior to joining Crump, McGrath had previously worked at Tri-City, another wholesale insurance broker firm. (McGrath Depo., 83:4-6.)

During his tenure with Crump, McGrath often worked from home on Fridays (McGrath Depo., 47:18-19) (**FACT 15**)  To facilitate his working from home, he would sometimes print

5

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    insurance policy expiration lists. (McGrath Depo., 47:18-19) (**FACT 16**)  These lists contained

2    the name of the insured, when the policies would expire, names of the retail agent, commission

3    and premium information.  (McGrath Depo., Vol., 49:2-50:2.) (**FACT 17**)  The information on

4    the expiration lists would contain the same information readily available from the retail agent.

5    (McGrath Depo., Vol., 49:2-50:2.) (**FACT 18**)  Moreover, Crump's Manager of the San

6    Francisco office admits that this information is maintained by other companies and that anyone in

7    the industry could access this information without the assistance of a Crump employee. (Scott

8    Depo., 81:20- 82:19) (**FACT 19**)

9    　　　　In 2007, McGrath's title at Crump was Executive Vice President where he worked in the

10    San Francisco office as a broker and earned the honor of "Broker of the Year" for his work in

11    2006.  (Hargrove Depo., 128:4-6; McDonough Depo., 69:23-70:11.) (**FACT 20**)  McGrath was

12    not an officer of Crump, having no equity, partnership or joint venture relationship with Crump.

13    (McGrath Depo., 222:12-14; McDonough Depo., 26:4-6, 27:13-23; Affidavit of Mike McGrath

14    (McGrath Aff.), ¶ 2.) (**FACT 21**)  McGrath did not develop or approve any corporate policies or

15    budget.  (McGrath Aff., ¶ 2.) (**FACT 22**)  He was not even at the top of the organizational

16    structure for the small San Francisco office.  (McGrath Aff., ¶ 2.) (**FACT 23**)

17    **C.    McGrath's Employment Agreement With Crump Expired as of December 31, 2000**

18

19    　　　　Pursuant to his employment with Crump, McGrath signed a MOA on June 7, 1996.

20    (McGrath Depo., Vol. 1, 25:8:22 and Ex. 4 attached thereto.) (**FACT 24**)  The MOA, in part,

21    broadly restricted McGrath's ability to compete in the insurance industry:

22    　　　　　　12.    **NONCOMPETITION FOR CERTAIN CRUMP CUSTOMERS** – Upon termination of Employee's employment hereunder, Employee agrees that for a period of two years following such termination he will not, without the written consent of Crump, directly or indirectly, solicit insurance wholesale brokerage business for any Account, either personally or in collaboration with others.  As used in this Paragraph 12, "Account" shall refer to those insurance or policies that were either: (i) carried on the books of Crump or any subsidiary of Crump Group at any time during the twelve-month period prior to Employee's termination and with respect to which Employee personally performed service or employment duties during the twelve-month period prior to Employee's termination; or (ii) those potential accounts of Crump or any subsidiary of Crump Group, with regard

23

24

25

26

27

28

6

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to which Employee personally worked to obtain, secure or develop during the twelve-month period prior to Employee's termination. As used in the Paragraph 12, "Insurance wholesale brokerage business", is limited to the lines of insurance coverage and other services that: (i) Crump or any subsidiary of Crump Group placed or provided for such Account during the twelve-month period prior to Employee's termination or (ii) with regard to which Employee had personally done any work during the twelve-month period prior to Employee's termination in connection with any attempt or anticipated attempt by Crump or any subsidiary of Crump Group to provide or place.

\*    \*    \*

14.    **SOLICITING COMPANY EMPLOYEES** – Employee agrees that he will not, for a period of one year following termination of employment with Crump, solicit any of Crump Group employees to work for any other competitive company. **(FACT 25)**

McGrath did not keep a copy of the MOA. (McGrath Depo., 24:22-25:7 and Ex. 4.) **(FACT 26)** In a letter dated March 28, 2000, Crump told McGrath that his MOA (employment contract) would end on December 31, 2000 because his team did not make its revenue numbers for 1999. (Affidavit of Mike McGrath, ¶ 3 and Exs. A and B.) **(FACT 27)** McGrath never signed any other MOA, nor any document which had non-compete or non-solicitation language. (McGrath Aff., ¶ 3.) **(FACT 28)** In his most recent Broker Compensation Agreement with Crump signed on April 30, 2007, the MOA was referenced, but it was not attached as an Exhibit to the 2007 Brokerage Compensation Agreement. (McGrath Depo., 126:10-24 and Ex. 6.) **(FACT 29)**

D.    **All Risks Contacted McGrath and Cyndi Marty Individually About Job Opportunities at All Risks**

All Risks is a wholesale insurance brokerage firm that is significantly smaller than Crump.[3] (McGrath Aff., ¶ 4.) In 2007, All Risks contacted McGrath regarding possible employment with All Risks. (McGrath Depo., 83:11-21.) **(FACT 30)** During this time, he

_____

[3] Crump has been identified by <u>Business Insurance</u> magazine as the largest wholesale insurance brokerage firms in the United States. (Hargrove Depo., 34:13-35:12 and Ex. 2 attached thereto.) All Risks, however, has not been identified as even one of the top ten largest wholesale insurance brokerage firms in the United States. (Hargrove Depo., 34:13-35:12 and Ex. 2 attached thereto.)

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION FOR MSJ
CASE NO. C-07-4636 MMC

1  communicated primarily with All Risks' President, Nick Cortezi ("Cortezi"). (McGrath Aff.,

2  ¶ 4.) During these conversations, All Risks and McGrath did not talk about business that

3  McGrath may be able to bring to All Risks. (McGrath Depo., 84:2-86:4) (**FACT 31**) In those

4  conversations with Cortezi, McGrath identified members of his team, including broker Marty

5  (who worked almost exclusively with retailer Marsh McClennan). (McGrath Depo., 86:17-

6  89:20.) (**FACT 32**) McGrath told Cortezi that Marty was a good broker, who had been with

7  Crump less than a year and was at Marsh for ten years prior to Crump. (McGrath Depo., 86:17-

8  89:109; Deposition of Nicholas Cortezi (Cortezi Depo.),110:5-11:9.) (**FACT 33**) McGrath did

9  not provide Cortezi with any other information regarding Marty or tell Cortezi how to contact

10 Marty. (McGrath Depo., 86:17-89:10; Cortezi Depo., 110:5-11:9.) (**FACT 34**)

11       Cortezi was generally already aware of Marty, as she was known to have a good

12 reputation in the industry. (Cortezi Depo., 112:1-11; Scott, Depo. 232:14-233:8.) (**FACT 35**)

13 Cortezi wanted to hire Marty as a broker even if All Risks could not hire McGrath. (Cortezi

14 Depo., 111:10-19; Deposition of Cynthia Marty (Marty Depo.), 36:20-37:5) (**FACT 36**) Cortezi

15 initially contacted Marty in early May 2007. (Marty Depo., 18:23-19:11) (**FACT 37**) When she

16 first received the call, Marty told McGrath that someone from a company called "All Risks" had

17 contacted her about a job. (Marty Depo., 22:2-23:1) (**FACT 38**) McGrath's only response was

18 that she should listen and asked generally what Marty was going to do. (McGrath Depo. 93:2-11;

19 Marty Depo., 22:2-23:21.) (**FACT 39**)

20       Cortezi then arranged to have dinner with McGrath and Marty on or about May 16, 2007.

21 (McGrath Depo., 90:15-19; Cortezi Depo., 133:21-134:18; Marty Depo., 25:11-23.) (**FACT 40**)

22 Cortezi communicated with McGrath and Marty independent of each other to set up the dinner.

23 (McGrath Depo., 90:15-19; Cortezi Depo., 120:18-121:9.) (**FACT 41**) It was not until right

24 before the dinner that Marty first learned that McGrath would also be attending the dinner.

25 (Marty Depo., 26:21-27:21, 42:4-44:4.) (**FACT 42**) In fact, until the dinner, Marty did not learn

26 that McGrath was also talking with All Risks about job opportunities. (Marty Depo., 42:4-44:4.)

27 (**FACT 43**)

28       Even though Crump's payment structure is fairly well known in the industry, Cortezi

8

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   discussed with Marty her compensation at Crump. (Cortezi Depo., 136:18-138:4, 138:19-139:2)

2   (**FACT 44**)  Around this time, McGrath told Cortezi that Marty should be guaranteed at least six

3   years of employment if McGrath would be given a six year contract and suggested a salary for

4   Marty because he felt she should be fairly compensated.  (McGrath Depo., 110:22-112:12, 184:9-

5   21 and Ex. 18: 236:2-237:8.) (**FACT 45**). After the dinner, Marty and McGrath's had limited

6   discussions concerning All Risks.  (Marty Depo., 43:9-44:2) (**FACT 46**)  Essentially, the

7   conversation involved Marty telling McGrath that he should have told her that he was talking to

8   All Risks - to which McGrath replied, "Nope.  You have to make your own decisions on this."

9   (Marty Depo., 43:9-44:2) (**FACT 47**)

10      **E.    McGrath Resigns and Was Immediately Dismissed by Crump**

11          While on vacation the week before resigning, McGrath had to forward an insurance quote

12   to his home Yahoo! email account because he was unable to access his Crump email account via

13   the hotel's computer.  (McGrath Depo., 60:22-62:20.) (**FACT 48**)  The insurance quote contained

14   in this email was not anywhere near the price McGrath needed and it did not make sense to him.

15   (McGrath Depo., 60:22-62:20.) (**FACT 49**)  As a result, he did not use the insurance quote.

16   (McGrath Depo., 60:22-62:22.) (**FACT 50**)

17          During his vacation, McGrath made the decision to move to All Risks.  (McGrath Depo.,

18   105:7-107:3.) (**FACT 51**)  After returning from vacation, McGrath called Peter Scott, Crump's

19   Manager of the San Francisco office, on June 3, 2007 to resign over the phone.  (McGrath Depo.,

20   114:23-115:6.) (**FACT 52**)  On June 3, 2007, McGrath also spoke with Marty and advised her

21   that he accepted a position with All Risks.  (McGrath Depo., 159-14-18; Marty Depo., 46:15-18.)

22   (**FACT 53**)  During this call, Marty told McGrath that she had <u>already decided</u> to accept a job

23   offer from All Risks.  (Marty Depo., 48:1-14.) (**FACT 54**)  This was the first time that McGrath

24   learned that Marty was planning to accept an offer with All Risks.  (Marty Depo., 48:1-14.)

25   (**FACT 55**)

26          On June 3, 2007, McGrath went to Crump to collect some personal belongings and

27   download his outlook calendar and contact list, which contained mostly personal e-mail addresses

28   and doctor appointments.  (McGrath Depo., 71:3-72:16, 258:8-16.) (**FACT 56**)  On Monday,

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

1    June 4, 2007, McGrath discussed his resignation with Scott in person. (**FACT 57**) Scott asked

2    McGrath to leave Crump **immediately**. (McGrath Depo., 115:24-116:11; Hargrove Depo.,

3    159:16-22.) (**FACT 58**)

F.    **McGrath Moved To All Risks But Did Not Bring Or Use Any Information**
      **From Crump, Nor Did He Solicit Any Clients Or Employees Of Crump**

McGrath was told by All Risks to make sure he was no longer in possession of any

information related to Crump prior to this start date with All Risks. (McGrath Depo., 59:13-

60:14; Cortezi Depo., 103:23-104:12.) (**FACT 59**) McGrath threw away all of the expiration lists

that he had printed as a Crump employee to use while working at home on Fridays. (McGrath

Depo., 47:13-54:16.) (**FACT 60**) He did not make any use of this information after starting

employment with All Risks. (McGrath Depo., 47:13-54:16.) (**FACT 61**) McGrath did not bring

any Crump information with him to All Risks. (McGrath Depo., 60:18-21.) (**FACT 62** )

It was not until after McGrath began working at All Risks on June 4, 2007 that he

announced his change of employers to various retail agents. (McGrath Depo., 65:22-70:2)

(**FACT 63**) After McGrath resigned, some retailers made the decision to change Broker of

Record from Crump to All Risks. (McGrath Depo., 153:3-13; Hargrove Depo., 166:2-168:19;

Scott Depo., 267:25-269:9; McDonough Depo., 74:18-76:17.) (**FACT 64**) McGrath did not

request the changes in Broker of Record – rather they were suggested by the retail agent.

(McGrath Depo., 153:3-13.) (**FACT 65**) Also, McGrath's base compensation was not tied to

revenues generated at All Risks. (McGrath Depo., 240:8 - 242:13.) (**FACT 66**)

McGrath did not attempt to convince any Crump employees to join All Risks. (Marty

Depo., 69:12-70:9; McDonough Depo., 50:8-15; McGrath Depo. 187:13-20.) (**FACT 67**)

G.    **Marty Resigned From Crump and Did Not Speak with McGrath about Any**
      **Business Information While She Remained at Crump**

Marty decided to accept the position with All Risks before knowing about McGrath.

(Marty Depo., 47:17-25) (**FACT 68**) In fact, she had no idea what McGrath was planning to do

in terms of leaving Crump. (Marty Depo., 47:17-25) (**FACT 69**) Marty made the decision to

leave Crump without consulting McGrath and because she makes her own decisions on her

career. (Marty Depo., 69:12-23.) (**FACT 70**) Marty would have joined All Risks even if

10

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  McGrath did not decide to do so.  (Marty Depo., 69:12-23.) (**FACT 71**)

2  Marty remained at Crump through the end of June 2007.  (Marty Depo., 65:25-67:13)

3  (**FACT 72**)  During the time she was still at Crump and McGrath had already moved to All Risks,

4  McGrath never asked her to provide him with any business information.  (Marty Depo., 68:12-18)

5  (**FACT 73**)

6  ## III.    LEGAL ARGUMENT

7  ### A.    Plaintiff Cannot Establish That Defendants Misappropriated Trade Secrets (Second Cause of Action)

8

9  #### 1.    Plaintiff Cannot Establish That Any Information Was a Trade Secret

Under the California Uniform Trade Secrets Act ("UTSA"), information is a trade secret

10  if it: (1) derives independent economic value, actual or potential, from not being generally known

11  to the public or to other persons who can obtain economic value from its disclosure or use; and

12  (2) is the subject of efforts that are reasonable under the circumstance to maintain its secrecy.

13  UTSA, Cal. Civ. Code § 3426.1(d); *Abba Rubber Co. v. Seaquist,* 235 Cal. App. 3d 1, 21 (1991);

14  *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal.App.4th 241, 251 (2004).  Plaintiff claims the

15  trade secrets at issue in this case are "client lists, expiration lists, underlying client information,

16  and information regarding co-employees."  (Crump's Complaint for Damages, ¶ 35.)  The

17  information at issue here does not fall within UTSA's definition of a trade secret.

18

19  #### a.    The Identities of Crump Clients and Their Contact Information Do Not Constitute Trade Secrets or "Confidential and Proprietary" Information.

20  The identity or lists regarding Crump's alleged clients – retail agents – and their contact

21  information are both readily ascertainable and generally known in the industry.  (**FACTS 1-5, 7-**

22  **9**)  Crump admits that the names, addresses and telephone numbers of companies are contained

23  within the Kirschner's Insurance Directories (an industry-specific directory), accessible via 411,

24  through a Google search or by simply "doing your homework." (**FACTS 8-9**)  Moreover, the

25  identity of retail agents is not a valuable "secret" because they are a finite group of agents known

26  to all wholesale brokerage firms, such as Crump and All Risks. *See, e.g., Am. Paper &*

27  *Packaging Prod., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1325-26 (1986) (a list of customers that

28

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

1   need shipping supplies does not qualify as a trade secret because their identities are apparent to

2   others in the trade); *Continental Car-Na-Var Corp. v. Moseley,* 24 Cal. 2d 104, 111 (1944) (list of

3   companies who were potential buyers of floor cleaning compounds not a trade secret because

4   their identities were obvious to competitors); *Scott v. Snelling & Snelling, Inc.,* 732 F. Supp.

5   1034, 1044 (N.D. Cal. 1990) (information that is readily obtainable through public sources such

6   as directories does not qualify as a trade secret); *Matthews Paint Co.,* 148 Cal. App. 2d at 172

7   (contact information listed in telephone directories are not proprietary or confidential).  Crump's

8   contention that retail agent contact information qualifies as confidential information or trade

9   secret must be rejected.

           **b.**       **The Underlying Client Information, Including Policy Terms,**
10                        **Premiums, And Expiration Dates, Does Not Constitute Trade**
11                        **Secrets Or Confidential Information.**

12      Crump contends that the policy terms, premiums, and expiration dates of its clients

13  constitutes confidential information.  But again, given testimony from Plaintiff's current and

14  former managers and officers, it is undisputed that retail agents and insurance carriers are free to

15  – and often do – disclose this information to other non-Crump brokers.  (**FACTS 6, 10-13, 17**)

16  Moreover, this information is not information solely maintained and kept by Crump, but also by

17  other companies in the industry.  (**FACT 19**)  All of the information necessary for McGrath and

18  other brokers to do their job is either available through the retail agents or through public sources.

19  (**FACT 13**)  Crump cannot now claim in this lawsuit that this is confidential or trade secret

20  information.

           **c.**       **Co-Employee Information Regarding Marty Was Not a Trade**
21                        **Secret**
22
23      The only co-employee at issue is Marty and the only potential trade secret issue was her

    compensation.  However, Crump's payment structure was generally known in the industry.
24
    (**FACT 44.**)  Consequently, Plaintiff cannot show that co-employee information about Marty was
25
    a trade secret.
26
           **d.**       **Plaintiff Did Not Make Any Reasonable Efforts To Maintain**
27                        **The Confidentiality Of This Information**

28      Not only must the information be confidential, but efforts must be taken to maintain the

12

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   information as confidential (e.g., password protecting the information). *Morlife, Inc. v. Perry* 56

2   Cal.App.4th 1514, 1522 (1997); UTSA, Cal. Civil Code §3426.1(d)(2). Absent such a showing,

3   the "trade secret" will no longer be protected and it is presumed to not be a trade secret. *Morton*

4   *v. Rank Am. Inc.,* 812 F.Supp. 1062, 1075 (C.D. Cal. 1993). Plaintiff has not made any showing

5   that it has made reasonable efforts to maintain the confidentiality of this retail agent contact or

6   policy information that is obtained from the retail agents. Nor can it, considering Crump's own

7   witnesses have testified that the information is readily accessible from the retail agents or public

8   sources, such as industry directories and 411. (**FACTS 1-5, 7-9**) Therefore, Plaintiff cannot meet

9   this element to establish that the information was trade secrets.

### 2.   Plaintiff Cannot Establish that either McGrath or All Risks Misappropriated any Alleged Trade Secret

Even if the information at issue constituted trade secret information and even if it was

protected in a confidential manner, Crump cannot demonstrate that either McGrath or All Risks

misappropriated anything. Under the UTSA, "Misappropriation" means:

> (1)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (2)  Disclosure or use of a trade secret of another without express or implied consent by a person who;

>> (A)    Used improper means to acquire knowledge of the trade secret; or

>> (B)    At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was;

>>> (i)  Derived from or through a person who had utilized improper means to acquire it;

>>> (ii)  Acquired under the circumstances giving rise to a duty to maintain its secrecy or limit its use; or

>>> (iii)  Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

Cal. Civil Code §3426.1(b). Crump cannot meet the requirement of the UTSA to show

misappropriation.

13

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2      McGrath did not take any of the trade secret information with him. (**FACTS 15-17, 48-**

3    **50, 56, 59-62**)  When he resigned, he took some personal belongings and downloaded his outlook

4    calendar and contact list, which contained mostly personal e-mail addresses and doctor

5    appointments. (**FACTS 48-50, 56**)  McGrath disposed of all Crump property (i.e., the insurance

6    expiration lists) before his new employment with All Risks and did not make use of these lists or

7    the e-mailed insurance quote. (**FACTS 15-17, 59-62**)  All Risks told McGrath to make sure he

8    was no longer in possession of any information related to Crump prior to this start date with All

9    Risks. (**FACT 59**)  McGrath did not give any Crump information to All Risks.  Furthermore,

10   McGrath did not provide All Risks with any "co-employee" information, including compensation

11   information, regarding Marty. (**FACTS 32-34, 44-45**)  All Risks got this information directly

12   from Marty. (**FACTS 44-45**)

13      The mere fact that a person once had access to information about a former employer and

14   thereafter made sales to former clients is insufficient to prove misappropriation. *Continental Car-*

15   *Na-Var Corp.,* 24 Cal. 2d at 107 (the mere fact that defendant Franzus was employed for twenty-

16   two months by plaintiff, and as a result of that employment knew the formulae for plaintiff's

17   products when he left plaintiff's employ in 1936 is not sufficient evidence from which an

18   inference could be drawn that he was using or intended to use such formulae on behalf of the

19   defendants).  Crump has no proof that either Defendant used any information and bases this entire

20   case on unsubstantiated suspicion.  McGrath had worked with retail agents for ten years or more.

21   (**FACT 14**)  As a result, much of the information concerning retail agents was committed to his

22   memory.  McGrath cannot be expected to wipe his mind clean. *Ikon Office Solutions, Inc. v. Am.*

23   *Office Prods., Inc.* 178 F. Supp. 2d 1154, 1169 (D.Ct. Or. 2001)  (citing *Fleming Sales Co., Inc.*

24   *v. Bailey,* 611 F. Supp. 507, 514 (N.D. Ill. 1985) which holds that "[a]ny other rule would force a

25   departing employee to perform a prefrontal lobotomy on himself or herself.")  Moreover, as

26   discussed above, the retail agent contact and policy information was accessible from public

27   sources and from the retail agents themselves – it did not need to be taken. (**FACTS 1-5, 7-9, 12-**

28   **13.**)

14

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.**  **Plaintiff's Breach of Contract Claim Against McGrath Must Be Dismissed (First Cause of Action)**

Crump's Breach of Contract cause of action rests solely on Crump's claim that McGrath violated numerous provisions of a 1996 MOA. (Crump's Complaint for Damages, ¶¶ 10-14, 22). For three reasons, this cause of action is without merit:

- The MOA was cancelled and was never lawfully renewed.
- The MOA that Crump attempts to enforce is illegal on its face.
- McGrath has not breached any provision of the MOA.

**1.**    **The Agreement Was Cancelled And Never Lawfully Renewed**

In a letter dated March 28, 2000, Crump informed McGrath that the provisions of the 1996 MOA would end on December 31, 2000 because his team had failed to meet their revenues for 1999. (**FACTS 24, 27**) Uniform Commercial Code Section 2106(3); *See also Grant v. Aerodraulics*, 91 Cal. 2d 68, 75 (1949) ("To 'terminate' a contract…means to abrogate so much of it as remains unperformed, thereby doing away with the existing agreement upon the terms and with the consequences agreed upon.") Accordingly, because Crump cancelled the 1996 MOA as of December 31, 2000, the MOA was not binding against McGrath.

Moreover, McGrath never re-executed a new MOA with Crump with valid and enforceable terms. (**FACT 28**) Crump may argue that it renewed the MOA by incorporating the MOA by reference into McGrath's 2007 Broker Compensation Agreement. This argument is without merit.

In order to incorporate by reference the terms of some other document into an employment agreement, the reference "must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal. App. 3d 632, 641 (holding that an arbitration provision was not clearly and unequivocally incorporated by reference into an employment agreement between the parties). On April 30, 2007, McGrath signed a Broker Compensation Agreement with Crump. (**FACT 29**) That agreement referenced the 1996 MOA, but it did not attach the

15

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   MOA as an exhibit. (**FACT 29**) McGrath did not have a copy of the MOA and did not know its

2   provisions. (**FACT 26**) Since Crump failed to attach or otherwise provide a copy of the 1996

3   MOA to McGrath when he executed the 2007 Broker Compensation Agreement, the terms of the

4   1996 MOA were not lawfully incorporated nor renewed.

### 2.    The Agreement Is Illegal On Its Face

6       California Business and Professions Code Section 16600 is clear and unequivocal: "every

7   contract by which anyone is restrained from engaging in a lawful profession, trade, or business of

8   any kind is to that extent void."  The California Supreme Court has recently held that all

9   nonsolicitation of customers agreements are invalid under Section 16600, **even if narrowly**

10  **drawn,** unless they fall within narrow statutory exceptions or are necessary to protect trade

11  secrets.[4] *Edwards v. Arthur Anderson LLP*, 2008 Cal. LEXIS 9618, 20-21 (Cal. S.Ct. Aug. 7,

12  2008).  In rejecting the Ninth Circuit's adoption of the limited or "narrow restraint" exception to

13  section 16600 in *Campbell v. Trustees of Leland Stanford Jr. Univ.*, 817 F.2d 499 (9th Cir. 1987),

14  *Edwards* states that "Section 16600 is unambiguous, and if the Legislature intended the statute to

15  apply only to restraints that were unreasonable or overbroad, it could have included language to

16  that effect." *Edwards*, 2008 Cal. LEXIS at p. 21. *See also Churchill v. Winter Chevrolet*, 2005

17  U.S. Dist. LEXIS 4292 1, 20 (N.D. Cal. 2005) (summary judgment entered in favor of defendant

18  employee on breach of contract claim because non-compete agreement with former employer,

19  which prohibited employees from undertaking employment or acts competitive with the

20  defendant employer for five years and within 50 miles of the corporation's principal place of

21  business, was unenforceable under Business and Professions Code Section 16600); *see also*

22  *Latona v. Aetna U.S. Healthcare, Inc.,* 82 F. Supp. 2d 1089, 1095-1096 (C.D. Cal 1999); *Scott v.*

23  *Snelling and Snelling, Inc.,* 732 F. Supp. 1034, 1043 (N.D. Cal. 1990) ("it is well settled under

24  California law that an employer cannot restrain a former employee from conduct other than that

---

[4]  The statutory exceptions to Business and Professions Code Section 16600 pertain to the sale or
dissolution of corporations (Section 16601), partnerships (Section 16601; Section 16602) and limited
liability corporations (Section 16602.5).

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION FOR MSJ
CASE NO. C-07-4636 MMC

1  which would constitute unfair competition or use of trade secrets" and "reliance on contractual

2  language begs the question [of whether] the information allegedly used [to solicit customers]

3  constitutes a trade secret subject to judicial protection").

4     Section 12 of the MOA at issue here contains a broad non-competition clause that

5  prohibits McGrath from soliciting any insurance business for current or potential accounts after

6  he leaves Crump. (**FACTS 24, 25**) This clause is not limited to McGrath's use of information

7  that Crump contends is confidential or trade secrets. (**FACTS 24, 25** ) It is a sweeping provision,

8  forbidding competition for any insurance business conducted by or anticipated by Crump. This

9  clause is exactly the type held void pursuant to California law and public policy. This clause also

10 permeates the MOA, making the agreement void under California law.

11        **3.     No Terms Of The Agreement Have Been Breached**

12     Even if the MOA had not expired and this Court finds the agreement facially legal, Crump

13 is without recourse because McGrath did not breach the MOA. Crump's Complaint alleges that

14 McGrath breached the following provisions of the MOA:

15        (a) Confidential Information (MOA ¶ 10.);

16        (b) Protection of Crump Property (MOA ¶ 11.);

17        (c) Noncompetition for Certain Crump Customers (MOA ¶ 12.)[5];

18        (d) Organization of Competitive Business (MOA ¶ 13.); ·

19        (e) Soliciting Company Employees (MOA ¶ 14.); and

20        (f) Voluntary Termination by Employee (MOA ¶ 16).

21 (Crump's Complaint for Damages, ¶¶ 10-14, 22).

22             **a.     McGrath Did Not Disclose or Make Use of Any Confidential
                        Information (MOA ¶ 10.)**
23

24     First, there is no confidential information that Crump can argue is protected. In order for

25 information to qualify as a protectable trade secret or confidential information, it must (1) derive

26 ─────────────────────────

27 [5]  Crump's Complaint does not allege that McGrath breach Paragraph 12 of the MOA: Noncompetition for Certain Crump Customers. Nevertheless, Defendants address this clause because McGrath did not breach Paragraph 12.

28

17

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  independent economic value from not being generally known to competitors; and (2) be the

2  subject of reasonable efforts to maintain its secrecy. Cal. Civ. Code § 3426.1(d); *Abba Rubber*

3  *Co. v. Seaquist,* 235 Cal. App. 3d 1, 21 (1991); *DVD Copy Control Ass'n, Inc. v. Bunner*, 116

4  Cal.App.4th 241, 251 (2004). For the reasons set forth above, Plaintiff cannot identify any

5  information that even qualifies as a protectable trade secret. The information concerning retail

6  agents is public – found through Kirschner's Insurance directory, 411 and the Internet. (**FACTS**

7  **1-5, 7-9**) Policy information, including terms, premiums and expiration dates, is maintained by

8  the retail agents, who share this information with wholesalers of their choice. (**FACTS 6, 10-13,**

9  **18**) Also, this information is kept by other wholesale insurance companies, not just Crump.

10  (**FACT 19**) Given this, Crump did not and cannot make a reasonable effort to protect the alleged

11  trade secrets – it is in the public domain. In sum, all information needed for brokers to do their

12  jobs is available through public sources. It is not a trade secret or confidential information.

13       Second, there was no disclosure, use or misappropriation. A trade secret is only

14  "misappropriated" when such information is disclosed or used by a person who acquired

15  knowledge of the information through a breach or the inducement of a breach of a duty to

16  maintain secrecy or through an acquisition "under circumstances giving rise to a duty to maintain

17  its secrecy or limit its use…." Civ. Code § 3426.1 (a), (b); Civ. Code § 3426.1 (b)(2)(B)(ii); *see*

18  *also* § 3426.1 (b)(2)(B)(iii) (trade secrets misappropriated where derived "from or through a

19  person who owed a duty to the person seeking relief to maintain its secrecy or limit its use").

20       McGrath did not use, disclose or misappropriate any information. McGrath did not retain

21  any proprietary Crump information. (**FACTS 15-17, 48-50, 56, 59-62**) McGrath only retained

22  some information that he printed from Outlook, which was mostly personal in nature (including

23  email addresses and medical appointments). (**FACT 56**) He did not provide any information to

24  All Risks. (**FACTS 59-62**) McGrath did not use any alleged trade secret information to solicit

25  any Crump customers and he merely announced his new employment with All Risks. (**FACTS**

26  **48-50, 56, 59-62, 63-66**) Finally, McGrath did not use any alleged trade secret information to

27  solicit any Crump employees – Marty decided to leave on her own. (**FACTS 32-47, 67-71**)

28

DEFENDANTS' MOTION FOR MSJ
CASE NO. C-07-4636 MMC

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

#### b.    McGrath Did Not Retain Plaintiff's Property (MOA ¶ 11.)

The testimony is undisputed that McGrath did not retain any of Plaintiff's property when he moved to All Risks. (**FACTS 8-17, 48-50, 56, 59-62**) All Risks specifically instructed him to not bring anything with him to All Risks, to which McGrath complied. (**FACT 62**) Marty testified that McGrath neither asked her for nor did she provide any information from Plaintiff to McGrath. (**FACTS 72-73**) The insurance quote that McGrath received while on vacation was during his employment with Plaintiff – and was never used by McGrath (either at Crump or All Risks) or the retail agent in any event. (**FACTS 48-50**) In fact, the only item that McGrath may have retained from Plaintiff was information that he printed from Outlook, which was mostly personal in nature (including email addresses and medical appointments) and was otherwise publically available. (**FACT 56**)

#### c.    McGrath Did Not Wrongfully Solicit Plaintiff's Customers (MOA ¶ 12.)

It is established under California law that "[m]erely informing customers of one's former employer of a change in employment, without more, is not solicitation." *Aetna Bldg. Maintenance Co. v. West* (1952) 29 Cal. 2d 198, 204. Moreover, the right to announce a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition. *Hilb, Rogal & Hamilton Ins. v. Robb*, 33 Cal.App.4[th] 1812, 1821 (1995). McGrath did not solicit any Crump clients. Rather, he only announced his new employment, which he is most certainly permitted to do. (**FACTS 63-66**) And it is undisputed that he did not make any announcements until after he had moved to All Risks. (**FACT 63**) Plaintiff has not – and cannot – produce any evidence to rebut these facts. Moreover, it is undisputed that the retail agent – and not McGrath – is the one that initiates the request for change of Broker of Record letters. (**FACT 65**) McGrath should not be punished for the retail agents' decisions to leave Crump.

Moreover, under California law, a former employee has the right to engage in competition and solicit his former employer's customers provided that he does not utilize the former employer's trade secrets. *American Credit Indemnity Co. v. Sacks,* 213 Cal. App. 3d 622, 634

19

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  (1989) ("Obviously, in the absence of a protectable trade secret, the right to compete fairly

2  outweighs the employer's right to protect clients against competition from former employees");

3  *Scott v. Snelling & Snelling, Inc.,* 732 F. Supp. at1043 ("it is well settled under California law that

4  an employer cannot restrain a former employee from conduct other than that which would

5  constitute unfair competition or use of trade secrets subject to judicial protection"). Although

6  Crump claims that McGrath's announcement to his clients violated the non-competition

7  agreement he signed when it hired him, the MOA would only be enforceable if the information he

8  allegedly used constituted a trade secret. *Scott,* 732 F. Supp. at 1043. Otherwise, the agreement

9  would contravene California Business and Profession Code section 16600. As set forth above,

10  the information that Crump identifies as trade secrets is publicly known and not reasonably

11  protected by Crump. (**FACTS 1-5, 7-9**) Therefore, Crump cannot restrain McGrath's use of

12  such information.

### d.  McGrath Did Not Organize a Competitive Business While He Was Working For Crump (MOA ¶ 13.)

13
14  During the decade that he worked for Crump, McGrath did not do anything that was

15  anticompetitive to Crump's business. He did not misappropriate any trade secret information --

16  even if something at issue in this case could be morphed into a trade secret. (**FACTS 15-17, 48-**

17  **50, 56, 59-62**) Also, he did not solicit Crump employees. McGrath merely interviewed for

18  another job when he realized Crump was no longer the right fit for him. (**FACTS 32-47, 67-71**)

19  Crump claims McGrath's interviewing with All Risks was anti-competitive to Crump. Crump's

20  assertion contradicts California's strong public policy favoring an employee's right to change

21  employers. Cal. Bus. & Prof. Code § 16600.

### e.  McGrath Did Not Wrongfully Solicit Plaintiff's Employees (MOA ¶ 14.)

23
24  California is an at-will employment state. Cal. Labor Code §2922. Employer and

25  employees are both free to terminate their employment with or without cause and with or without

26  notice. *Id.* Moreover, California has a strong public policy supporting the right of an employee

27  to change jobs by prohibiting restrictions on employee mobility. Cal. Bus. & Prof. Code § 16600;

28  *Application Group, Inc. v. Hunter Group, Inc.* 61 Cal.App.4[th] 881, 900 (1998). California Courts

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    uphold California Business & Professions Code section 16600 by stating it is "an expression of

2    public policy to ensure that every citizen shall retain the right to pursue lawful employment and

3    enterprise of their choice." *D'Sa v. Playhut, Inc.*, 85 Cal.App.4[th] 927, 933 (2000) (citations

4    omitted).  "The interest of the employee in his own mobility and betterment are deemed

5    paramount to the competitive business interest of the employers, where neither the employee nor

6    his new employer has committed any illegal act accompanying the employment change." *D'Sa,*

7    85 Cal.App.4[th] at 933.

8        Here, McGrath's and Marty's testimony both confirm that McGrath did not solicit Marty

9    to join All Risks.  (**FACTS 32-47, 51-55, 67-71**)  Rather, All Risks rightfully and legally

10   contacted both McGrath and Marty.  (**FACTS 34-37, 40-41**)  Marty's own testimony confirmed

11   that the decision for her to move to All Risks was her own.  (**FACTS 67-71**)  She made the

12   decision without consulting McGrath, for her own career advancement and would have joined All

13   Risks regardless of whether McGrath had resigned from Crump.  (**FACTS 67-71**)  Marty – in

14   accordance with California public policy and law supporting the same – made her own decision to

15   change employers.  (**FACTS 67-71**)  Moreover, McGrath did not solicit any other employees to

16   leave All Risks.  (**FACTS 29-47, 67-71**)

17            **f.    McGrath Did Not Fail to Give 15 Day' Notice (MOA ¶ 16.)**

18       Crump's claim that McGrath failed to provide 15 days' notice of his resignation is simply

19   wrong.  On June 3, 2007, McGrath gave notice of his resignation to Crump.  (**FACTS 57-58**)

20   McGrath discussed his resignation with Scott the next day, who told him to leave immediately.

21   (**FACTS 57-58**)  Crump's own actions prevented McGrath from completing the 15-day notice

22   period.  For Crump to now claim otherwise is disingenuous.

23       **C.    Plaintiff Failed To Establish A Breach of Fiduciary Duty (Third Cause of
             Action)**

24

25            **1.    Plaintiff Cannot Show that McGrath Owed a Fiduciary Duty to
                    Plaintiff**

26       Crump cannot prove that there was any fiduciary relationship between it and McGrath.

27   *Burbank v. Nat'l. Casualty Co.,* 43 Cal. App. 2d 773, 781 (1941) (holding that "agency is a fact,

28   the burden of proving which rests upon the party affirming its existence").  Under California law,

21

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  there are two types of fiduciary duties: those created by law and those created by agreement.

2  *GAB Business Services, Inc. v. Lindsey & Newsom Claims Services, Inc.*, 83 Cal. App. 4th 409,

3  416 (2000) (overruled on other grounds).

4  Fiduciary duty created by law is imposed in certain relationships such as those between

5  partners, joint ventures directives, officers, or majority shareholders.  An officer who participates

6  in management of the corporation, exercising some discretionary authority, is a fiduciary of the

7  corporation as a matter of law.  *Id.* at 420-421.  Whether a corporate officer "participates in

8  management" is a question of fact.  *Id.* at 421.  In *GAB*, the Court held that the defendant was a

9  fiduciary of the plaintiff corporation given his (1) authority to develop and/or approve policies;

10  (2) authority to develop, allocate and monitor a $20 million expense budget; (3) his testimony that

11  he was at the "top of the organizational structure" for his region and (4) his testimony that he was

12  responsible for overall regional planning, sales, quality control, budgeting and performance of the

13  region.  *Id.* at 422.

14  Here, Crump cannot establish that McGrath was its fiduciary.  McGrath was not a partner,

15  joint venture, officer, or shareholder of Crump.  (**FACT 21**)  McDonough, the current Executive

16  Vice President of the San Francisco office, which is the same title that McGrath had at Crump,

17  testified that he is not an officer of Crump.  (**FACT 21**)  McGrath did not develop, approve or

18  monitor any corporate policies or expense budgets.  (**FACT 22**)   He was not at the top of the

19  organizational structure for the San Francisco region.  (**FACT 23**)  He was simply a successful

20  broker, whom Crump was upset to lose to a competitor.  Accordingly, a fiduciary duty cannot be

21  imposed upon McGrath by law.

22  The other type of fiduciary relationship is where there exists an agreement between the

23  parties.  *Id.*  There is no such agreement in this case.  No fiduciary duty existed here.

24  ### 2.    Plaintiff Cannot Show That McGrath Breached This Duty

25  McGrath did not breach any fiduciary duty.  Crump alleges that McGrath breached a

26  fiduciary duty by using or disclosing information "such as client lists, expiration lists, underlying

27  client information, and information relating to employees of Plaintiff" and by using the

28  information to solicit Crump employees.  Nothing could be further from the truth.  As stated

22

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    above, he did not disclose information to All Risks, retain information or solicit Crump

2    employees. (**FACTS 15-17, 32-56, 59-62, 67-71**) Consequently, even if a fiduciary duty existed

3    – which it did not – McGrath did not breach it.

        **D.**     <u>**Plaintiff Cannot Establish McGrath or All Risks Intentionally Interfered**</u>
<u>**With Prospective Economic Advantage (Clients) (Fourth Cause of Action) or**</u>
<u>**(Employees) (Sixth Cause of Action) Claims**</u>

6            To prevail on its claim for Intentional Interference with Prospective Economic Advantage,

7    Crump  must prove by specific and substantial evidence: (1) an economic relationship between

8    itself and some third party, with the probability of future economic benefit; (2) Defendants'

9    knowledge of that relationship; (3) intentional acts on the part of the Defendants designed to

10    disrupt the relationship; (4) actual disruption of the relationship; (5) causation; and (6) the

11    Defendants' conduct was "wrongful by some legal measure other than the fact of the interference

12    itself." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153-1154 (2003). To

13    satisfy the final element, Crump must demonstrate that McGrath's and All Risks' respective

14    conduct was independently unlawful and "proscribed by some constitutional, statutory,

15    regulatory, common law, or other determinable legal standard." *Id.* at 1158.

        **1.**     **Plaintiff Cannot Show An Intentional And Independently Wrongful**
**Act On The Part Of McGrath Or All Risks – Plaintiff Cannot**
**Establish Elements Three Or Six**

18            To prove these elements, Plaintiff is required to show that Defendants' actions were each

19    intentional and "independently wrongful." *See Della Penna v. Toyota Motor Sales*, 11 Cal. 4th

20    376, 393 (1995) (holding that a plaintiff seeking to recover for alleged interference with

21    prospective economic relations has the burden of pleading and proving that the defendant's

22    interference was wrongful by some measure beyond the fact of the interference itself); *Korea*

23    *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-1159 (2003) (holding that

24    defendant's wrongful act must be intentional).

>          An act is not independently wrongful merely because defendant
> acted with an improper motive. . . . The tort of intentional
> interference with prospective economic advantage is not intended to
> punish individuals or commercial entities for their choice of
> commercial relationships or their pursuit of commercial objectives,
> unless their interference amounts to independently actionable
> conduct. . . . We conclude, therefore, that an act is independently

23

1    wrongful if it is unlawful, that is, if it is proscribed by some
     constitutional, statutory, regulatory, common law, or other
2    determinable legal standard.

3    *Id.* This requires that a defendant intentionally engaged in wrongful acts, not just an interference

4    in the economic relationship between plaintiff and another. *Id.* In this case, there is absolutely no

5    independently wrongful act on the part of either defendant. Plaintiff cannot sustain this burden.

6    McGrath did not solicit any Crump clients, none of the information that Crump accuses McGrath

7    or All Risks of using even qualifies as confidential/trade secret information, and Plaintiff's

8    "evidence" of misappropriation consists entirely of unsupported suspicions. (**FACTS 15-17, 48-**

9    **50, 56, 59-62, 72-73**)

10          Regarding employees, McGrath and Marty's testimony both confirm that McGrath did not

11   solicit Marty to join All Risks. Rather, All Risks rightfully and legally contacted both McGrath

12   and Marty individually. (**FACTS 32-47, 67-71**) Marty's own testimony confirmed that the

13   decision for her to move to All Risks was her own. (**FACTS 37-71**) Marty – in accordance with

14   California public policy and law supporting the same – made her own decision to change

15   employers. (**FACT 67-71**) Also, McGrath did not solicit any other Crump employees to join All

16   Risks. (**FACT 71**)

17          Accordingly, Crump cannot maintain its Fourth and Sixth Causes of Action.

18   **E.    Plaintiff Cannot Prevail On Its Negligent Interference With Prospective**
            **Economic Advantage (Clients) (Fifth Cause of Action) and (Employees)**
19          **(Seventh Cause of Action) Claims**

20          In order to recover damages based upon a claim of Negligent Interference with

21   Prospective Economic Advantage, Plaintiff must prove all of the following elements: (1) an

22   economic relationship existed between Plaintiff and a third party, containing a probable future

23   economic benefit or advantage to Plaintiff; (2) Defendants knew of the existence of the economic

24   relationship; (3) Defendants engaged in wrongful conduct; (4) it was reasonably foreseeable that

25   this wrongful conduct would interfere with or disrupt this economic relationship if Defendants

26   failed to exercise due care; (5) Defendants were negligent in their conduct, that is, they failed to

27   exercise due care; (6) the economic relationship was actually interfered with or disrupted; and

28   (7) the above described conduct caused Plaintiff damage, namely, Plaintiff lost in whole or in part

24

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    the economic benefit or advantage from the economic relationship. *J'Aire Corp. v. Gregory*, 24

2    Cal. 3d 799 (1979) (finding that the defendant owed a duty of care to render services in a non-

3    negligent fashion); *Wanland v. Los Gatos Lodge, Inc.,* 230 Cal. App. 1507 (1991).

### 1.    Neither McGrath Nor All Risks Engaged In A Wrongful Conduct – Plaintiff Cannot Establish Element Three

As discussed above, Plaintiff cannot meet the third element of this cause of action.

Neither McGrath or All Risks wrongfully solicited Crump clients or misappropriated confidential

Crump information. (**FACTS 15-17, 48-50, 56, 59-66, 72-73**)  Also, neither McGrath or All

Risks wrongfully solicited Crump employees. (**FACTS 32-47, 51-55, 67-71**)  *See Lange v. TIG*

*Ins. Co.,* 68 Cal. App. 4th 1179 (1998 (holding that, like the cause of action for intentional

interference, a cause of action for negligent interference also requires an independently wrongful

act by the defendant).  Accordingly, Crump's Fifth and Seventh Causes of Action should be

dismissed.

### IV.    **CONCLUSION**

Based on the foregoing, Defendants respectfully request that this Court grant their Motion

for Summary Judgment on the grounds that there is no evidence that supports Plaintiff's

Complaint.  Alternatively, Defendants respectfully request that this Court grant their Motion for

Summary Adjudication as to each individual cause of action on the grounds that there is no

evidence that supports any of Plaintiff's individual claims.

Dated: September 5, 2008

CURIALE DELLAVERSON HIRSCHFELD
& KRAEMER, LLP

By: _____
John F. Baum
Dena L. Narbaitz

Attorneys for Defendants
MICHAEL P. McGRATH and ALL RISKS,
LTD.

25