STEPHEN J. HIRSCHFELD (SBN 118068)
JOHN BAUM (SBN 148366)
DENA L. NARBAITZ (SBN 176556)
ANN E. SOTER (SBN 229838)
CURIALE DELLAVERSON HIRSCHFELD
 & KRAEMER, LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendants
MICHAEL P. McGRATH
and ALL RISKS, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

| | |
|---|---|
| CRUMP INSURANCE SERVICES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL P. McGRATH, an individual, ALL RISKS, LTD., a corporation, and Does 1 through 50, inclusive,<br><br>Defendant. | Case No. C-07-4636 MMC<br><br>**AFFIDAVIT OF MICHAEL MCGRATH IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION**<br><br>Date: October 10, 2008<br>Time: 9:00 a.m.<br>Judge: Honorable Maxine M. Chesney<br>CTRM: 7 |

I, Michael McGrath, declare as follows:

1. I am a Defendant in this case and make this Affidavit in Support of Defendants' Motion for Summary Judgment or, alternatively, Summary Adjudication. Except for those matters stated on information and belief, I have personal knowledge of the facts stated herein, and could and would testify competently thereto, if called upon to do so.

2. Until June 4, 2007, I was employed with Plaintiff Crump Insurance Services, Inc. In 2007, my job title at Crump was Executive Vice President. I was not an officer of Crump, and had no equity, partnership or joint venture relationship with Crump. I did not develop or approve any corporate policies or budget. I was not even at the top of the organizational structure for the

1

DECL. OF MICHAEL MCGRATH ISO MOTION FOR SUMMARY JUDGMENT
CASE NO.: C-07-4636 MMC

1  small San Francisco office.

2  3.  After signing the Memorandum of Agreement ("MOA") in 1996, I never signed any other MOA, nor any document which had non-compete or non-solicitation language. (Attached as <u>Exhibit A</u> is a true and correct copy of the 1996 MOA that Crump produced in this litigation.) In a letter dated March 28, 2000, Crump told me that the MOA (employment contract) would end on December 31, 2000 because my team did not make its revenue numbers for 1999. (Attached as <u>Exhibit B</u> is a true and correct copy of the March 28, 2000 letter I received from Crump.)

4.  In 2007, All Risks, Ltd ("All Risks") contacted me regarding possible employment with All Risks. During this time, I communicated primarily with All Risks' President, Nick Cortezi. I became employed with All Risks on June 4, 2007. I currently hold the position of Property Practice Leader, West Coast. All Risks is a wholesale insurance brokerage firm that is significantly smaller than Crump.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 2, 2008 at San Francisco, California.

_____
Michael McGrath

# EXHIBIT A

Case 3:07-cv-04636-MMC   Document 64   Filed 09/05/2008   Page 3 of 12

## MEMORANDUM OF AGREEMENT

MEMORANDUM OF AGREEMENT dated June 7, 1996 between Crump E&S of San Francisco Insurance Services, Inc., a California Corporation (hereinafter "Crump"), and Michael P. McGrath (hereinafter "Employee").

### INTRODUCTION

This Agreement is intended to set forth the terms and conditions of the employment relationship between Crump and Employee. This relationship is based on the agreement and understanding of the parties that Crump is the owner of the Crump Business relating to Crump Customers as these terms are used below, and that these customers comprise a substantial part of the goodwill of Crump. To protect the business and goodwill of Crump and the confidential information belonging to Crump, the parties have agreed to certain limitations on competition and disclosure of confidential information following termination of employment. Such limitations relate solely to Crump Business and Crump Customers, however, and are intended to permit Employee to remain in the insurance and brokerage business, if he so desires.

### AGREEMENTS

Crump and Employee agree as follows:

1. **EMPLOYMENT COMPENSATION** - Crump agrees to employ Employee to solicit, place, and service property or casualty business, during the term of the Agreement and to pay Employee a base salary of $125,000 per year, with future adjustments in accordance with Crump base salary guidelines. Base salary shall be payable in accordance with Crump regular payroll procedures, and may be changed only by written agreement of the parties.

2. **PERFORMANCE BY EMPLOYEE** - Employee agrees to devote his entire business time and effort to furtherance of the business of Crump and to perform faithfully to the best of his ability all assignments of work given to him by Crump.

3. **TERM** - The term of this Agreement shall commence as of the date of this Agreement and shall continue through December 31, 1997, at which time this Agreement will be extended automatically to June 30, 1999, if the combined Net Retained Revenue of Robert Lindner, Employee, and Paul Farbstein ("the Team") exceeds $1,500,000 for the time period July 1, 1996, through December 31, 1997. "Net Retained Revenue" shall be defined as brokerage actually received by Crump, less any return brokerage. This Agreement is at all times subject to earlier termination in accordance with paragraph 7 below.

1

C0001

Δπ EXHIBIT 4
McGrath
Deponent
Date 4/30/08   Rptr SFB
WWW.DEPOBOOK.COM

4. BONUS -

   a. <u>Signing Bonus</u>. Employee shall receive a one-time signing bonus of $75,000, payable with the first payroll check to be received by Employee. This signing bonus shall be subject to repayment on a pro-rata basis should Employee leave the employment of Crump at his own election, or for any circumstance outlined in paragraph 7 below, prior to July 1, 1999.

   b. <u>Annual Bonus</u>. Employee shall participate in an annual bonus pool based on the Net Retained Revenue credited to the Team Employee's share of this annual bonus pool shall be determined each year by, and at the discretion of, Employee's immediate supervisor.

5. BENEFITS - Employee shall be eligible to participate at the level of Vice President in any benefit plans and programs in effect from time to time and as amended by Crump, including annual leave entitlement established by Crump, including three weeks vacation which may be carried over from year to year.

6. EXPENSES - Employee will receive reimbursement for all ordinary and necessary business expenses in accordance with Crump's management guide. Employee shall receive an annual automobile allowance of $6,000, payable in equal semi-monthly installments with the Employee's regular payroll check, and shall also be reimbursed for office parking fees.

7. TERMINATION - The term of this Agreement shall be as stated in Paragraph 3. <u>Term</u>. unless terminated by:

   a. Employee's death or disability (disability, for the purpose of this Agreement, means the inability of Employee due to illness, accident or other physical or mental incapacity, to perform the duties and services provided for hereunder) for a period of ninety (90) consecutive days; or

   b. Discharge of Employee for cause, which, as used herein, shall mean if Employee: (i) violates any provision of this Agreement; (ii) performs any act which in the judgment of the Crump causes or has the potential to cause harm, injury or damage of any sort to Crump; or (iii) refuses or fails to carry out a resolution of the Board of Directors of Crump, other than for reasons of death or disability as previously described; or

   c. Conviction of Employee of a misdemeanor or felony; or

   d. Dereliction of duty, evidenced by an unexplained or unexcused failure of Employee to attend work for a period of ten (10) consecutive work days.

   In the event of termination of this Agreement for any of the reasons set forth in this Paragraph 7, Crump shall be responsible to pay or to provide Employee (or the Employee's lawfully designated beneficiary or to Employee's estate in the event of death) only those portions of any compensation, and/or other benefits due up to and including the effective date of termination of the Agreement, except for those benefits which survive termination pursuant to law.

2

C0002

Regardless of the reason, cause or occasion for termination, the provisions of Paragraph 8, 10, 11, 12, 13, and 14 shall survive the termination of employment and shall be and remain valid, binding and enforceable after termination.

8. **CRUMP BUSINESS** - All business and fees including insurance, bond, risk management, self-insurance and other services (collectively, the "Crump Business"), produced or transacted through the efforts of Employee shall be the sole property of Crump Group, Inc. (Crump Group, Inc. and its subsidiary corporations and departments, are herein referred to as "Crump Group"). Employee shall have no right to share in any commission or fee resulting from the conduct of such business other than as compensation referred to in paragraphs 1 and 4.

9. **PREMIUMS AND COLLECTIONS** - Premiums, commissions or fees on the Crump Group Business produced or transacted through the efforts of Employee shall be invoiced to the customer or account by one of the subsidiaries of Crump Group. All checks or bank drafts received by Employee from any customer or account shall be made payable to such company, and all premium, commissions or fees shall be collected by Employee in the name of and on behalf of such company.

10. **CONFIDENTIAL INFORMATION** - Employee acknowledges that, in the course of and as a result of his employment hereunder, he will become acquainted with confidential information belonging to Crump Group. This information relates to persons, firms, and corporations which are or become customers or accounts of Crump Group during the term of the Agreement ("Crump Customers"), and sources with which insurance is placed, including but not limited to, the names of customers, policy expiration dates, policy terms, conditions, and rates, familiarity with customer's risks. Employee agrees that during his employment hereunder he will not, without the written consent of Crump, disclose or make any use of such confidential information except as may be required in the course of his employment hereunder. Employee further agrees that upon termination hereunder, and for a period of one year thereafter, he will not disclose or make any use of such confidential information without the prior written consent of Crump.

3

C0003

11. **PROTECTION OF CRUMP PROPERTY** - All records, files, manuals, lists of customers, blanks, forms materials, supplies, computer programs, and other materials furnished to the Employee by Crump Group shall be and remain the property of Crump Group. Employee shall be deemed the bailee thereof for the use and benefit of Crump and shall safely keep and preserve such property, expect as consumed in the normal business operation of Crump Group. Employee acknowledges that this property is confidential and is not readily accessible to Crump's competitors. Upon termination of employment hereunder, the Employee shall immediately deliver to Crump or its authorized representative all such property, including all copies, remaining in the Employee's possession or control.

12. **NONCOMPETITION FOR CERTAIN CRUMP CUSTOMERS** - Upon termination of Employee's employment hereunder, Employee agrees that for a period of two years following such termination he will not, without the written consent of Crump, directly or indirectly, solicit insurance wholesale brokerage business for any Account, either personally or in collaboration with others. As used in this Paragraph 12, "Account" shall refer to those insurance or policies that were either: (i) carried on the books of Crump or any subsidiary of Crump Group at any time during the twelve-month period prior to Employee's termination and with respect to which Employee personally performed service or employment duties during the twelve-month period prior to Employee's termination; or (ii) those potential accounts of Crump or any subsidiary of Crump Group, with regard to which Employee personally worked to obtain, secure or develop during the twelve-month period prior to Employee's termination. As used in this Paragraph 12, "insurance wholesale brokerage business", is limited to the lines of insurance coverage and other services that: (i) Crump or any subsidiary of Crump Group placed or provided for such Account during the twelve-month period prior to Employee's termination or (ii) with regard to which Employee had personally done any work during the twelve-month period prior to Employee's termination in connection with any attempt or anticipated attempt by Crump or any subsidiary of Crump Group to provide or place.

13. **ORGANIZING COMPETITIVE BUSINESSES** - Employee agrees that so long as he is working for Crump he will not engage in business activity competitive with work he performs for Crump.

14. **SOLICITING COMPANY EMPLOYEES** - Employee agrees that he will not, for a period of one year following termination of employment with Crump, solicit any of Crump Group employees to work for any other competitive company.

15. **ENTIRE AGREEMENT, SEVERABILITY** - This Agreement sets forth the entire agreement between the Employee and Crump, and supersedes any and all prior agreements and understandings with respect to such employment. If any term of this Agreement is rendered invalid or unenforceable by judicial, legislative or administrative action, the remaining provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

16. **VOLUNTARY TERMINATION BY EMPLOYEE** - This Agreement (other than paragraphs 10, 11, 12, 13, and 14 hereof) may be terminated by Employee upon fifteen (15) days prior written notice given to Crump, or by other written agreement signed by both parties.

C0004

17. **INJUNCTIVE RELIEF** - This Agreement may be enforced by an injunction by any competent court enjoining and restraining any violation or threatened violation hereof without Crump being required to show any actual damage or to post any bond or other security.

18. **NOTICES** - All notices and consents provided for herein and all legal process shall be validly given, made or served, it in writing and delivered personally or sent by United States certified or registered mail, postage pre-paid, return receipt requested,

    If to Employer:

        Crump Insurance Services, Inc.
        7557 Rambler Road, Suite 350
        Dallas, Texas 75231-4163
        ATTN: Marcus Payne

    If to Employee:

        Michael P. McGrath
        552 Danby Court
        Petaluma, California 94954

19. **GOVERNING LAW** - This Agreement shall be construed in accordance with the laws of the State of California.

20. **NO WAIVER** - No failure of Employee to exercise any right, power or privilege given to Crump under this Agreement or no failure to insist upon strict compliance by Employee with any agreement, covenant, warranty or other obligation under this Agreement or no custom or practice of the parties at variance with the terms hereof shall be construed as waiver or relinquishment of any right granted hereunder to Crump. Waiver by Crump of any particular default by Employee shall not affect or impair Crump's right, power or privilege in respect to any subsequent default of the same or of a different nature, nor shall any delay or omission of Crump to exercise any right, power or privilege arising from such default affect or impair Crump's right, power or privilege as to such default or any subsequent default.

21. **ASSIGNMENT** - This Agreement shall not be assignable by Employee, but may, with the prior consent of Employee, be assigned by Crump to any of the subsidiaries of Crump Group, Inc. and shall be binding upon and inure to the benefit of Crump's successors and assigns.

22. **BINDING NATURE OF AGREEMENT** - This Agreement shall inure to the benefit of and be binding upon and enforceable against the heirs, legal representatives and assigns of Employee and the successors and assigns of Crump.

IN WITNESS WHEREOF, the parties hereto by their duly authorized representatives have executed this Agreement as of the date first above written.

                                        CRUMP E&S OF SAN FRANCISCO
                                        INSURANCE SERVICES, INC.

By: _____
Its:    Sr. Vice President

By: _____
      Michael P. McGrath

6

# EXHIBIT B

08/05/2007 11:02 FAX 4155379277 ☒ 029/030



# Crump Group

Crump Insurance Services, Inc.
9040 Roswell Road, Suite 350, Atlanta, Georgia 30350
Telephone (770) 998-7898, WATS (800) 241-8870, Facsimile (770) 998-8540

Michael R. Johnston
Executive Vice President & Regional Director

March 28, 2000

Mr. Mike McGrath
Crump E&S of San Francisco Insurance Services, Inc.
160 Spear Street
Suite 1600
San Francisco, CA 94105

RE:   2000 Compensation Plan

Dear Mike:

This letter is to confirm our conversation of March 13, 2000, along with Peter Scott, while I was visiting your office.

First let me take a moment to thank you for all of your hard work during 1999, under less than desirable circumstances, in turning Crump San Francisco into the outstanding office that it rapidly became. You and Peter deserve a tremendous amount of credit in pulling the staff together and in achieving excellent results. The entire organization is very proud of what all of you have accomplished.

Secondly, I want to personally congratulate you and the other members of the Property Team on your Eagle award. It is reserved for a special few and I hope you are as proud of it as we were to see it presented to you.

Our conversation on March 13th revolved around your current employment contract and the compensation agreement contained in it, which is more specifically contained in the employment contract of Bob Linder, your former team leader. Crump acknowledges that your contract extends through December 31, 2000, as the required team revenues were reached during 1998. The contract will end on December 31, 2000, as the required team revenues were not reached during 1999, to extend your contract beyond December 31, 2000.

A Member of the Sedgwick Group

C0070

Your contract calls for a sharing of the team bonus called for under the Bob Linder contract, a former employee, so we discussed that your 2000 Compensation Plan will be essentially the same as that called for in the Linder contract, adjusted to your actual base salary of $180,000. In other words, your 2000 compensation plan is "the old 80/20" plan, i.e., your bonus will be equal to 25% of all Net Retained Revenue credited to your code for the period of January 1, 2000 to December 31, 2000, which exceeds 80% of four times your annual base salary for the same period. Starting in 2001, you will be eligible for the Broker Compensation Plan in effect at that time.

We also discussed the Deferred Bonus aspect of Bob Linder's contract, which I had previously advised was not part of your contract, but I told you that I would revisit this issue with Joel Berrian. Joel and I did discuss this again and I am reconfirming to you that you are not eligible for the Deferred Bonus, as this was specifically designed for Bob Linder, and was never considered part of the Annual Bonus Plan that was to be shared with the team.

Mike, I trust all of the above is an accurate representation of what we discussed on March 13, and it was my general opinion that you were in agreement with all of this at that time, not withstanding the Deferred Bonus issue which I was to get back to you on. If you have any questions or comments regarding any of this, please do not hesitate to contact me.

Thank you once again for all your hard work and for your significant accomplishments, and I look forward to working with you on the challenges and opportunities ahead.

Regards,

*[signature: Mike Johnston]*

Mike Johnston


cc:   Joel Berrian
      Marcus Payne
      Cathy Brown
      Peter Scott
      Pat O'Brien